O. F. MILES

*v.*

STATE COMPENSATION COMMISSIONER AND
UNION CARBIDE AND CARBON CORPORATION

(No. 10407)

Submitted September 5, 1951.    Decided October 16, 1951.

*Bryan & Hazlett,* and *William H. Hazlett,* for appellant.

*Dayton, Campbell & Love, Charles M. Love,* and *Ernest H. Gilbert, Jr.,* for appellee.

LOVINS, JUDGE:

This is an appeal from an order of the Workmen's Compensation Appeal Board entered April 7, 1951, affirming an order of the State Compensation Commissioner, entered January 24, 1951. Appellant will be hereinafter referred to as "claimant", and the appellee, Union Carbide and Carbon Corporation, as "employer".

The claimant, a welder in the plant of the employer, filed an application for workmen's compensation in August, 1949, contending that his physical condition, diagnosed by his physician as "acute bronchitis due to inhalation of vanadium oxide dust", resulted from an exposure to such dust in the course of his employment on July 13, 1949.

Employer and claimant waived a non-medical hearing and the claim was referred to the Occupational Disease Medical Board, hereinafter referred to as the "board". On September 29, 1949, the board reported that claimant was suffering from acute bronchitis occasioned by the inhalation of vanadium oxide in the course of his employment and that such dust was a "known lung irritant which

may produce pulmonary edema without permanent damage except upon repeated exposure." According to the board's report, the statutory prerequisites to compensability were present. No objections were filed to such finding, and the commissioner thereafter, by an order entered October 14, 1949, determined the claim compensable and directed the payment of medical bills, but since there had been no time lost from employment, the commissioner ordered that no compensation on a temporary total disability basis be paid. There was no appeal from that order.

Claimant, while undergoing treatment, continued working for the employer, though the record does not disclose in what capacity or under what working conditions. The employer's plant physician wrote the commissioner on June 8, 1950, that he had treated the claimant until May, 1950, and, the claimant's complaints having become worse, he had sent him to another physician for consultation, who reported the results of his examination and reached the following conclusion:

"These findings are those of a rather marked tracheobronchitis associated with expiratory compression of the bronchi and their subdivisions, which changes probably account for the wheezing in the left chest. No changes were seen to specifically suggest the presence of a tumor in any form. The marked irritability of the tracheobronchial tree observed before and during examination is of the type commonly seen on patients who smoke excessively or are subjected to irritation of noxious chemical fumes."

Upon receipt of information from the employer that claimant had been absent from work since June 28, 1950, recuperating in Arizona, the commissioner placed the claimant on a temporary total disability basis, paying him benefits on that basis from June 28, 1950, to October 15, 1950, inclusive, less five days which he had worked in the month of September, 1950.

On October 23, 1950, claimant was directed by the chair-

man of the board to report to another physician for examination to determine the degree of his permanent disability, if any, resulting from his exposure of July 13, 1949. The last named physician reported, as a result of his examination, that it was impossible to estimate at that time the degree of permanent disability, and that the extent thereof would depend upon future developments. He expressed the opinion that claimant might develop fibrosis throughout the left lung field with increased difficulty in breathing and right heart enlargement, and he recommended that claimant be examined at intervals. Though somewhat inconsistent with his previous statement, he suggested a fifteen to twenty-five percent permanent partial disability award, based on existing symptoms, i.e., morning cough with the spitting of mucus and shortness of breath.

The chairman of the board, by letter dated November 9, 1950, transmitted a copy of the last report to the employer and the plant physician and advised them that the board members desired a discussion of the case with the representatives of the employer at its next meeting to be held on November 16, 1950. There is nothing to indicate that claimant was notified that his case was to be considered at the meeting on November 16.

The plant physician informed the board that it was impossible for him to attend the November 16 meeting, but that he concurred with the first consultant that claimant's permanent disability could not be determined at that time. He was of the opinion that if claimant's symptoms continued and followed the usual course, he should develop a swelling of the lungs, high blood pressure, purulent bronchitis, and reticulation on X-ray. He suggested, as did the first consultant, that claimant be examined at intervals, and if the foregoing conditions were demonstrated at any time, the matter of permanent disability could then be considered. He did not feel that claimant had any existing permanent disability, as he could work in his occupation as a welder in some other industry.

In a memorandum dated January 22, 1951, not sent to claimant or employer, the board expressed an opinion that the claimant's condition on that date was in no way connected with exposure to vanadium oxide dust which occurred in July, 1949.

On January 24, 1951, the commissioner entered an order and transmitted the same to claimant and employer by letter dated January 26, 1951. The order, after reciting that the claim was considered on the entire record and upon further medical evidence, affirmed the commissioner's ruling of October 14, 1949, and stated that "it is the further opinion of the Commissioner that any disability from which the claimant may now be suffering is due to causes other than his exposure to chemical fumes on or about July 13, 1949 * * * ."

The parties were advised in the letter of transmittal that either party could appeal from such order within the statutory time limit.

An appeal was taken by the claimant to the Workmen's Compensation Appeal Board, which affirmed the commissioner as above stated. This appeal followed.

Claimant contends that the board's findings of January 22, 1951, were not reported as required by statute; that claimant was not notified in advance that his claim would be considered on January 22, 1951; and that the commissioner's order of January 24, 1951, was ambiguous in that it affirms his prior determination of the compensability of the claim, but determines that claimant's then existing condition was due to causes other than his exposure to vanadium oxide dust.

The controlling issue upon this appeal is whether claimant has been afforded an opportunity to fully develop his case.

By amendment to the Compensation Act in 1949, occupational diseases other than silicosis were made specifically compensable. Chapter 136, Acts of the Legislature, Regular Session, 1949. Prior to July 1, 1949, the effective

date of such amendment, silicosis was the sole occupational disease specifically compensable, other diseases being compensable only if attributable to a specific and definite event arising in the course of, and resulting from, employment. *Cashman* v. *Sims*, 130 W. Va. 430, 43 S.E. 2d 805; *Gilbert* v. *Comp. Com'r.*, 121 W. Va. 10, 1 S.E. 2d 167; *Lockhart* v. *Compensation Com'r.*, 115 W. Va. 144, 174 S.E. 780.

Code 23-4-1, as amended by Chapter 136, *id.*, sets forth certain prerequisites to compensability in claims for occupational disease other than silicosis, viz., "(1) that there is a direct causal connection between the conditions under which work is performed and the occupational disease, (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, (3) that it can be fairly traced to the employment as the proximate cause, (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment, (5) that it is incidental and peculiar to the character of the business and not independent of the relation of employer and employee, and (6) that it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction." In ascertaining the foregoing, nonmedical and medical inquiries are necessary.

Section 15-c, Article 4, Chapter 136, *id.*, requires the commissioner to make certain nonmedical findings. Upon protest to such findings, either party is entitled to a hearing. After final hearing, an appealable order is entered. If no hearing is demanded, or if, after appeal, the commissioner's action is sustained, the claim is referred to the board for its review of the medical aspects of the claim.

Section 8-d, Article 4, Chapter 136, *id.*, creates the Occupational Disease Medical Board, called the "board" herein, its function being "to determine all medical questions relating to [such] cases * * *". Section 8-f, Article 4, Chap-

ter 136, *id.*, establishes the procedure before the board upon reference to it of a claim, requires the board to make certain findings and conclusions, requires that a copy of such findings be furnished the employer and claimant, and affords either party a hearing if objections are filed within a period of fifteen days from mailing of a copy to them. If no hearing is demanded, a final determination of the compensability of the claim is then made. In the event of hearing, either party may, at such time, examine and cross examine the board members and any other medical examiners who have filed reports in the claim, and evidence to support or controvert the board's findings may be adduced. After final hearing, a determination of the case is made by the commissioner, from which either party, if dissatisfied, may appeal to the Workmen's Compensation Appeal Board, under Code, 23-5-1, as amended by Chapter 137, Acts of the Legislature, Regular Session, 1939.

The foregoing procedure is concerned with an initial determination of the claim. When the compensability of a claim is finally established, as was the situation in the case at bar in October, 1949, Code, 23-4-6, as amended by the Act of 1949, provides for the payment of benefits. This section makes no distinction between claims for occupational disease and those arising from trauma, such section providing in part as follows:

"Where compensation is due an employee under the provisions of this chapter for a personal injury other than silicosis, such compensation shall be as provided in the following schedule:

"(a) If the injury causes temporary total disability, the employee shall receive during the continuance thereof sixty-six and two-thirds per cent of his average weekly earnings, not to exceed a maximum of twenty-five dollars a week nor to be less than a minimum of fifteen dollars a week.

"* * *

"(c) If the injury causes permanent disability, the per-

centage of disability to total disability shall be determined and the award computed and allowed as follows: * * * "

Under Code, 23-4-6, as amended by Chapter 136, *id.*, an occupational disease claimant is entitled to a rating for permanent disability if such disability is established by proof. The claimant and the employer have the right to a hearing upon the filing of objections to such determination, under Code, 23-5-1, as amended, which provides as follows: " * * * but upon the making or refusing to make any award, or upon the making of any modification or change with respect to former findings or orders * * * the commissioner shall give notice, in writing, to the employer, employee, claimant, or dependent, as the case may be, of his action, which notice shall state the time allowed for filing an objection to such finding, and such action of the commissioner shall be final unless the employer, employee, claimant or dependent shall, within thirty days after the receipt of such notice, object, in writing, to such finding. Upon receipt of such objection the commissioner shall * * * set a time and place for the hearing of evidence * * *. Both employer and claimant shall be notified of such hearing at least ten days in advance * * *. After the final hearing the commissioner shall * * * render his decision * * * which shall be final; provided, however, that the claimant or the employer may apply to the appeal board * * * for a review of such decision. * * *."

The record discloses a compliance with the statute in the making of the initial determination in the case at bar. Moreover, the commissioner was acting properly in referring the claimant to a physician for examination and in seeking the advice of the board on the question of permanent disability. Under the provisions of Code, 23-4-6, as amended, the determination of permanent disability is the function of the commissioner. "As a general rule, the extent of permanent disability occasioned by an accident not being capable of exact measurement (except in those enumerated in the statute), its determination is a question of fact which rests within the sound discretion of the

Compensation Commissioner, under the facts and circumstances of each particular case." *Stone* v. *Board,* 106 W. Va. 572, 576, 146 S.E. 372; 1 Honnold on Workmen's Compensation, Secs. 156 & 157.

There was, however, a deviation from proper procedure in denying claimant an opportunity to protest and in failing to accord a hearing upon the question of his permanent disability, at which he should have been accorded the opportunity to present evidence to controvert the finding of the commissioner on January 24, 1951. In the commissioner's letter of January 26, 1951, transmitting the order of January 24, the employer and claimant should have been notified of the time allowed for filing an objection to such finding, as required by Code, 23-5-1, as amended, and in the event of the filing of such objection within the time specified, the case should have been placed upon the commissioner's regular hearing docket, as is any other contested claim.

"Where the facts concerning a claim for compensation, arising under the Workmen's Compensation Act, are not sufficiently developed by evidence to enable the commissioner or the court to arrive at the real merits of the claim, an order may be entered here recommitting the case to the commissioner for further development." *Holland* v. *Comp. Comm'r.,* 112 W.Va. 507, 165 S.E. 675; *Pripich* v. *Comp. Comm'r.,* 112 W.Va. 540, 166 S.E. 4; *Bowling* v. *Comp. Comm'r.,* 112 W.Va. 604, 166 S.E. 9; *Stricklin* v. *Comp. Comm'r.,* 112 W.Va. 661, 166 S.E. 364.

We do not pass on the merits of the claim here asserted, nor do we think it necessary to discuss the ambiguity allegedly created by the inconsistency between the orders of the commissioner entered on October 14, 1949, and January 24, 1951, respectively, since the order last made by the commissioner is reversed.

For the foregoing reasons, the order of the Workmen's Compensation Appeal Board entered April 7, 1951, and the order of the State Compensation Commissioner entered January 24, 1951, are reversed, and the proceeding

is remanded to the State Compensation Commissioner with directions to proceed therein in accordance with the principles herein enunciated.

*Reversed and remanded with directions.*