499 S.E.2d 283

STATE of West Virginia ex rel. The WEST VIRGINIA STATE POLICE, a governmental agency, and Director of the West Virginia State Police Criminal Records Section, Petitioners,

v.

Honorable C. Reeves TAYLOR, Judge of the Circuit Court of Mineral County; Marsha K. MILLS, individually and as Administratrix of the Estate of Terrance Lee Mills; Quality Supplier Trucking, Inc., a West Virginia Corporation; and Roadway Express, Inc., a corporation, Respondents.

No. 24150.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 9, 1997.

Decided Nov. 20, 1997.

H.F. Salsbery, Madonna C. Estep, Salsbery & Druckman, Charleston, for Petitioners.

Darrell V. McGraw, Jr., Attorney General Dolores A. Martin, Assistant Attorney General, Charleston, for Respondents.

STARCHER, Justice:

In this case, a plaintiff in a civil lawsuit issued a subpoena to the West Virginia State Police for the criminal record of the man who killed her husband. The killer, who is in prison for the crime, had refused to authorize the release of his criminal record. The Circuit Court of Mineral County required that the records be made available for the civil litigation.

We conclude that such a subpoena may be enforced only if there are exceptional circumstances. Because the record is not clear as to whether such circumstances exist in this case, we require the circuit court not to enforce the subpoena until the court applies the exceptional circumstances test set forth in this opinion.

## I.

### Facts and Background

The petitioners, the West Virginia State Police and Sergeant T.A. Barrick, invoke the original jurisdiction of this Court by a writ of prohibition under the provisions of Article VIII, Section 3 of the *West Virginia Constitution,* and *W.Va.Code,* 53–1–2 [1933]. We proceed by first reviewing the positions of the parties to the instant proceeding.

### A.

### Petitioners' Contentions

The petitioners allege that:

1. Petitioner Sergeant Barrick is the supervisor in charge of the Criminal Identification Bureau ("CIB"), a division of the petitioner West Virginia State Police. The CIB is established pursuant to the provisions of *W.Va.Code,* 15–2–24(a) [1977].

2. The CIB operates a central state repository for the storage of fingerprints and other records of persons arrested or detained by law enforcement officers. This opinion will refer generally to such records as "crimi-

nal history record information."[1] The CIB also has access to criminal history record information compiled by the National Crime Information Center ("NCIC"), a federal agency in the Department of Justice.

3. The respondent, Marsha K. Mills, is the plaintiff in a wrongful death suit in the Circuit Court of Mineral County, West Virginia.[2] On February 6, 1997, the Circuit Court of Mineral County, pursuant to a request by respondent Mills, issued a *subpoena duces tecum* directing the petitioners to produce criminal history record information for Elijah Ruffin, Jr.

4. In response to the *subpoena duces tecum*, the petitioners filed a "Motion to Quash Subpoena Duces Tecum."

5. On April 23, 1997, in a brief order that did not include factual findings or a statement of reasons, the circuit court, following a telephonic hearing, denied the petitioners' motion to quash and ordered that the criminal history record information of Elijah Ruffin, Jr. be provided to the respondent Mills by the petitioners.

On June 18, 1997, this Court agreed to consider a writ of prohibition to review the circuit court's ruling on the petitioners' motion to quash.

■ The petitioners contend that respondent Mills is not entitled to obtain criminal history record information from the petitioners by means of a court order enforcing a *subpoena duces tecum*[3] because such a method for obtaining such information is not authorized by the provisions of *W.Va.Code*, 15–2–24 [1977], which addresses the release of criminal history record information in subsections (c), (d) and (e).

Subsection (c) of *W.Va.Code*, 15–2–24 [1977] authorizes the release of such information to law enforcement and governmental agencies which request the information:

> The criminal identification bureau may furnish fingerprints, photographs, records or other information *to authorized law-enforcement and governmental agencies* of the United States and its · territories, . . . upon proper request stating that the fingerprints, photographs, records or other information requested are necessary in the interest of and will be used solely in the administration of official duties and the criminal laws. (Emphasis added.)

Petitioners note that respondent Mills is neither a law enforcement or governmental agency; nor does she have the intention to use the information sought about Elijah Ruffin, Jr. for the administration of official duties and criminal laws.

Subsection (d) of *W.Va.Code*, 15–2–24 [1977] authorizes the release of criminal history record information upon request to entities or individuals other than law enforcement agencies or organizations:

> The criminal identification bureau may furnish, with the approval of the superintendent, fingerprints, photographs, records or other information *to any private or*

---

**1.** · "Criminal history record information" is the term used by the federal regulations that govern the national system of local, state and federal records of arrests, charges, dispositions, etc. 28 C.F.R. 20.3 [1976]. Compliance with federal regulations governing the dissemination of criminal history record information is a requirement of participating in the NCIC system and receiving federal financial assistance. 28 C.F.R. 20.1 [1976] *et seq.*

**2.** The defendants in the underlying lawsuit, Quality Supplier Trucking, Inc. and Roadway Express, Inc., have not participated in the instant prohibition proceeding before this Court.

**3.** By a "court order enforcing a *subpoena duces tecum*," we mean a ruling by a circuit court which upholds the merits of the *subpoena duces tecum's* issuance. Such a ruling may (as in the instant case) deny a motion to quash a subpoena.

Or the circuit court may take some other action to enforce a *subpoena duces tecum*. This Court has stated that:

> A subpoena is issued automatically by a clerk of court upon the *ex parte* application of one party litigant, and although a subpoena is enforceable through the court's power of contempt until it has been quashed by regular, in-court proceedings, a bare subpoena is not the type of binding court order contemplated by *W.Va.Code*, 27–3–1(b)(3) [1977] [the statute governing the release of mental health records].

Syllabus Point 3, *Allen v. Smith*, 179 W.Va. 360, 368 S.E.2d 924 (1988).

In the instant case, we are similarly considering not a "bare subpoena," but a binding court order determining after a hearing requiring compliance with a *subpoena duces tecum.*

*public agency, person, firm, association, corporation or other organization,* ... but all requests ... for such fingerprints, photographs, records or other information must be accompanied by a written authorization signed and acknowledged by the person whose fingerprints, photographs, records or other information is to be released. (Emphasis added.)

Petitioners state that respondent Mills has not supplied the petitioners with Mr. Ruffin's written authorization to release information about him.

Subsection (e) of *W.Va.Code,* 15-2-24 [1977] authorizes the release of criminal history record information to federal and state identification bureaus for "the purpose of aiding law enforcement:"

The criminal identification bureau may furnish fingerprints, photographs, records and other information of persons arrested *or sought to be arrested in this State to the identification bureau of the United States government and to other states* for the purpose of aiding law enforcement. (Emphasis added).

Petitioners note that respondent Mills is an individual plaintiff in a civil case, and not a law enforcement identification bureau.

In summary, petitioners say that the release of Mr. Ruffin's criminal history record information to respondent Mills pursuant to a court order enforcing a *subpoena duces tecum* is barred by state law, because Ms. Mills does not fall within one of the three categories of persons or entities listed in *W.Va.Code,* 15-2-24 [1977] that may obtain such information.

The petitioners also contend that the federal regulations which govern the dissemination of criminal history record information bar the release of the information to respondent Mills pursuant to a court order enforcing a *subpoena duces tecum.*

Petitioners cite to 28 C.F.R. 20.33 [1990], which states:

[C]riminal history record information contained in any Department of Justice criminal history record information system will be made available:

(1) To criminal justice agencies for criminal justice purposes; and

(2) To Federal agencies authorized to receive it pursuant to Federal statute or Executive order.

(3) Pursuant to Public Law 92-544 (86 Stat. 1115) for use in connection with licensing or local/state employment or *for other uses only if such dissemination is authorized by Federal or state statutes* and approved by the Attorney General of the United States. (Emphasis added.)

Since the West Virginia statute, *W.Va. Code,* 15-2-24 [1977], which delineates three categories of persons or entities that may obtain criminal record history information, does not provide for the release of criminal record history information pursuant to a court order enforcing a *subpoena duces tecum,* petitioners contend that 28 C.F.R. 20.33 [1990] prohibits the use of such a method for obtaining the information that respondent Mills seeks.

Petitioners conclude that the circuit court's denial of petitioners' motion to quash respondent Mills' *subpoena duces tecum* for the criminal history record information of Elijah Ruffin, Jr. was clearly erroneous as a matter of law.

### B.

### *Respondent's Contentions*

In response to the petitioners' contentions, respondent Marsha K. Mills submits the following allegations and argument. We emphasize that we accept respondent Mills' factual allegations as substantially true only for purposes of our ruling in the instant case. Respondent states that:

1. The underlying action in the circuit court arises from the shooting death of the respondent Marsha Mills' husband, Terrance Lee Mills. At the time of his death, Terrance Mills was employed by Quality Supplier Trucking as an over-the-road truck driver.

2. At the time of the shooting, Elijah Ruffin, whose criminal history record information is being sought by the respondent, was employed by Roadway Trucking Company as an over-the-road truck driver. Ruffin

was subsequently convicted of manslaughter in Terrance Mills' death.[4] The shooting occurred after an argument between the truck drivers which began on citizens' band radio. Ruffin also shot at Mills' fellow employee, Richard A. Bryan, who was "running" with Mills in a separate truck; Bryan was not injured.[5]

■ 3. During the sentencing phase of Ruffin's trial, respondent Mills became aware of certain information concerning Ruffin's past criminal conduct. Subsequently respondent Mills, individually and as executrix of her late husband's estate, filed a wrongful death suit against Roadway Trucking Company,[6] alleging *inter alia* the negligent hiring of Elijah Ruffin.[7]

4. Ruffin was also convicted of use of a handgun in the commission of a crime of violence, assault, reckless endangerment and illegally transporting a handgun in a motor vehicle. He was sentenced to 25 years in prison. Allegedly the length of Ruffin's sentence was predicated upon his extensive criminal history, including an earlier conviction for shooting and killing another person.

5. This was the basis for Ruffin's assault and reckless endangerment convictions.

6. Mr. Mills' employer, Quality Supplier, was also named in the suit in a claim of tortious interference with Mrs. Mills' right to Workers' Compensation wrongful death benefits.

7. This Court has recognized a cause of action based upon negligent hiring. *See King v. Lens Creek Ltd. Partnership,* 199 W.Va. 136, 483 S.E.2d 265 (1996); *Thomson v. McGinnis,* 195 W.Va. 465, 465 S.E.2d 922 (1995); *Sisson v. Seneca Mental Health/Mental Retardation Council, Inc.,* 185 W.Va. 33, 404 S.E.2d 425 (1991). A leading negligent hiring case is *DiCosala v. Kay,* 91 N.J. 159, 450 A.2d 508 (1982).

One commentator has described the test applied by courts in negligent hiring cases as:
When the employee was hired, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring an unfit person?
Shattuck, Cathie A., *"The Tort of Negligent Hiring and the Use of Selection Devices: the Employee's Right of Privacy and the Employer's Need to*

4. Respondent Mills believes that Ruffin's criminal history includes but is not limited to: (a) another manslaughter conviction; (b) assault with intent to murder; and (c) multiple weapons possession charges.[8]

5. Respondent Mills' counsel was advised by Ruffin's prison case manager that Ruffin's criminal history record information could be released by the prison, upon receipt of Ruffin's written authorization or upon receipt of a court order. Respondent's counsel attempted to contact Ruffin on several occasions by leaving messages with prison authorities requesting that Ruffin call counsel collect. Ruffin did not call.[9]

6. After attempts to obtain authorization from Ruffin were unsuccessful, the respondent's counsel moved the circuit court for

*Know,"* 11 *Indus.Rel.L.J.* 2–3, and cases collected therein at notes 2–5. (1989).
The obtaining of criminal history record information has been an issue in a number of negligent hiring and retention cases. *See, e.g., Cramer v. Housing Opportunities Comm'n.,* 304 Md. 705, 501 A.2d 35 (1985); *Ponticas v. K.M.S. Investments,* 331 N.W.2d 907 (Minn.1983); *Parker v. Fox Vacuum, Inc.,* 732 S.W.2d 722 (Tex.App.—Beaumont 1987); *Williams v. Feather Sound, Inc.,* 386 So.2d 1238 (Fla.App.1980).

8. Respondent Mills says that during discovery she has learned that Ruffin disclosed one weapons possession charge on his application for employment with Roadway. Respondent alleges that notwithstanding this information, Roadway did not do any investigation into Ruffin's criminal background. Respondent has named an expert to testify that Roadway had a duty to investigate Ruffin's background pursuant to federal regulations, industry standards, and Roadway's own Safety Manual.

9. The respondent also scheduled Ruffin's deposition on two different occasions. In December, 1996, Ruffin, through counsel for the defendant Roadway, requested that the deposition be postponed until Ruffin could obtain counsel. The respondent agreed to postpone the deposition. The respondent, by counsel, attempted to contact Ruffin on multiple occasions to determine whether he had obtained counsel, but to no avail. Finally, the circuit judge ordered that the deposition of Ruffin be taken at his place of confinement. Respondent made arrangements with the prison and noticed the deposition for June 16, 1997. Counsel for the respondent as well as counsel for the defendant Roadway and a court reporter traveled to Maryland for the deposition, only to have Ruffin refuse to be deposed, notwithstanding the West Virginia circuit court's order.

the entry of an order authorizing the release of Ruffin's criminal history record information. The circuit court granted the respondent's motion and ordered the release of the criminal history record information. Respondent's counsel says that when counsel attempted to use the order to obtain the information from the Maryland prison, the prison had been instructed by the Maryland Attorney General's Office that it is not obligated to follow the orders of a West Virginia circuit judge.

7. Although Maryland advised that it would release the information upon receipt of a federal court order or a Maryland circuit court order, the respondent's counsel states that "because there is no action currently pending in federal court or in Maryland state court which involves this case," respondent's counsel determined that "the simplest course" would be to have a *subpoena duces tecum* for the information issued and served upon the petitioners.

The petitioners' unsuccessful attempt to quash this *subpoena duces tecum* led to the instant case before this Court, upon a writ of prohibition.

The respondent disagrees with the petitioners' assertion that the circuit court exceeded its legitimate authority by ordering the release of the criminal history record information of Elijah Ruffin.

Respondent Mills argues that the three categories of authorized releases of criminal history record information which are set out in *W.Va.Code*, 15–2–24 [1977], subsections (c), (d), or (e) are not stated in the statute to be the exclusive permissible methods for obtaining the information sought by the respondent.

Respondent points out that the statute addresses only the permissible furnishing of information which is *requested* by an agency or individual, and is silent as to the production of information when *required* to do so by a court order enforcing a *subpoena duces tecum*.

Respondent additionally contends that the federal regulations regarding the dissemination of criminal history record information do not bar the use of a court order enforcing a *subpoena duces tecum*.

Respondent cites to 28 C.F.R. § 20.21(b)(2) [1977], which provides in pertinent part that:

... dissemination of nonconviction [criminal history record information] data [must be] ... limited, whether directly or through any intermediary only to:

... (2) Individuals and agencies *for any purpose authorized by* statute, ordinance, executive order, or *court rule, decision or order, as construed by appropriate State or local officials or agencies* [.] (Emphasis added.) [10]

Respondent also argues that substantial injustice would result if she is not able to demonstrate in her civil case alleging negligent hiring what the criminal history record information report on Elijah Ruffin, Jr. is—and thus what the defendant Roadway would have learned had it sought and obtained such information.

Additionally, respondent says she will be unfairly prejudiced in the discovery process if she is unable to review such information to identify what Ruffin's entire criminal history actually is—since he will not provide this information.

II.

*Standard of Review*

■ The standard of review applicable to a writ of prohibition like the instant case was stated in Syllabus Point 1 of *State ex rel. United Hosp. Center, Inc. v. Bedell,* 199 W.Va. 316, 484 S.E.2d 199 (1997):

" 'A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having

---

**10.** The language cited by the respondent is reinforced by 28 C.F.R. Sec. 20.21(c)(3) [1977], which states that:

States and local governments will determine the purposes for which dissemination of crimi-

nal history record information is authorized by State law, executive order, local ordinance, *court rule, decision or order.* (Emphasis added.)

such jurisdiction exceeds its legitimate powers. W.Va.Code, 53–1–1.' Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977)." Syllabus Point 2, *State ex rel. Kees v. Sanders*, 192 W.Va. 602, 453 S.E.2d 436 (1994).

■ Additionally, Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996), states:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

■ Finally, when a writ of prohibition raises the invasion of confidential materials that are exempted from discovery, the discretionary exercise of this Court's original jurisdiction may be particularly appropriate. *See* Syllabus Point 3, *State ex rel. USF & G v. Canady*, 194 W.Va. 431, 460 S.E.2d 677 (1995). If a circuit court's discovery ruling with respect to allegedly confidential materials will result in the compelled disclosure of those materials, a hard and more stringent examination will be given to determine if the circuit court abused its discretion. *Id.*, Syllabus Point 5.

## III.

### Discussion

### A.

### Is There An Absolute Bar?

■ The first issue which we address is whether there is an absolute bar to a nongovernmental party obtaining criminal history record information about an individual who will not consent to the release of the information by means of a court order enforcing a subpoena duces tecum issued in a civil action to a governmental or law enforcement agency.

We conclude that there is no absolute bar—for four reasons. First, our statute does not compel finding such a bar. Second, the pertinent federal regulations do not compel finding such a bar. Third, constitutional considerations and equity strongly argue for finding no bar. Fourth, the important interests of privacy, confidentiality and economy may be served without finding an absolute bar.

### 1.

### The West Virginia Statute

West Virginia's statute addressing the release of criminal history record information, *W.Va.Code*, 15–2–24 [1977], directly addresses only the release of criminal history record information when such information is "requested." The statute is silent on what is permissible upon the issuance of a court order *requiring* the production of such information. And our statute does not state, either expressly or indirectly, that the authorizations for the release of information which the statute delineates are exclusive.

We have under analogous circumstances found that the lack of an express statutory authorization for the power of subpoena did not mean that finding such a power is barred. In *Huntington Human Relations Comm'n ex rel. James v. Realco, Inc.*, 175 W.Va. 24, 26, 330 S.E.2d 682, 684 (1985), this Court rejected the contention that a statute's failure to explicitly state that a local human relations commission had the power to obtain documents by means of a *subpoena duces tecum* issued by a circuit court "implicitly denied" that power to the commission—so

that such power could not be found in other principles and provisions of law. 175 W.Va. at 25, 330 S.E.2d at 683.

In *Huntington*, we declined to apply the principle of *expressio unius est exclusio alterius* ("the express mention of one thing implies the exclusion of another")—because other authority permitted finding that the Commission had the power of subpoena, even though the power was not expressly set forth in the statute authorizing the creation of local commissions.

In the instant case, we similarly conclude that *W.Va.Code*, 15–2–24 [1977]'s silence regarding whether criminal history record information may be obtained by means of a court order enforcing a *subpoena duces tecum* does not mandate an absolute bar to obtaining such information by such a method—if there is other substantial support in the law for finding that such a procedure may be permitted.

As discussed hereinafter, we do find—in the language of the pertinent federal regulations, in the policies and procedures authorized by the *West Virginia Rules of Civil Procedure*, and in consideration of constitutional guarantees and equity—other substantial support for permitting the use of a court order enforcing a *subpoena duces tecum* in exceptional circumstances to obtain criminal history record information.

Therefore we do not apply the principle of *expressio unius est exclusio alterius* to *W.Va.Code*, 15–2–24 [1977] to find an absolute bar against the use of a court order enforcing a *subpoena duces tecum* to obtain criminal history record information.

### 2.
### Federal Regulations

Two separate federal regulations govern the dissemination of criminal history record information. Although the language of the regulations in question is not a model of clarity, it appears that the regulatory limitation on the petitioners' dissemination of *national* NCIC information is stricter than the limitation which governs the dissemination of *state* CIB information.

28 C.F.R. Sec. 20.21 [1977], which is principally relied upon by the respondent, pertains to the dissemination of state criminal history record information which is collected and retained in a centralized state criminal information bureau (CIB).

28 C.F.R. 20.33 [1990], which is principally relied upon by the petitioners, pertains to the dissemination of national criminal history record information which may be obtained by states or localities from the NCIC.

One way in which the regulations differ is in the type of criminal history record to which each regulation applies. The regulation pertaining to the dissemination of state CIB criminal history record information, 28 C.F.R. Sec. 20.21 [1977], only limits the dissemination of non-conviction data—such as records of arrests where no conviction is subsequently obtained.[11] In contrast, 28 C.F.R. 20.33 [1990], which applies to national NCIC information, does not make a distinction between conviction and nonconviction information.[12]

In this opinion, we adopt the premise that the respondent seeks and the petitioners object to producing both conviction and nonconviction criminal history record information regarding Mr. Ruffin. We also proceed upon the premise that the respondent seeks and the petitioners object to producing information which is directly contained in petitioners' state CIB database, as well as the national

---

11. The comments to Sec. 20.21(b) [1977] state:
  The regulations distinguish between conviction and nonconviction information insofar as dissemination is concerned. Conviction information is currently made available without limitation in many jurisdictions. Under these regulations, conviction data and pending charges could continue to be disseminated routinely. No statute, ordinance, executive order, or court rule is necessary in order to authorize dissemination of conviction data.

12. Although our ruling in the instant case does not turn on the distinction between conviction and nonconviction information, the jurisprudence of employment law has in many instances attached substantial importance to this distinction, particularly as it relates to the issue of what information or criteria an employer may use in making employment decisions. *See* Shattuck, note 5 *supra*.

information which petitioners may request as a participant in the NCIC.[13]

We initially consider the federal regulation governing the dissemination of state CIB criminal history record information, 20 C.F.R. 20.21(b)(2) [1977], which *inter alia* authorizes the release of nonconviction data from a state database upon the issuance of a "court order."

Since by its own terms this regulation contemplates the release of criminal history record information pursuant to a court order, the regulation cannot support a finding of an absolute bar to the release of criminal history record information pursuant to a court order enforcing a *subpoena duces tecum*.

■ We next examine the federal regulation which addresses the dissemination of national NCIC information, 28 C.F.R. 20.33 [1990]. This regulation states in pertinent part that:

> (a) Criminal history record information ... will be made available ... (3) for other [non-law enforcement] uses only if such dissemination is authorized by Federal or *state statutes* and approved by the Attorney General of the United States. (Emphasis added.)

The issue presented by this regulatory language is: does a court order enforcing a *subpoena duces tecum* fall within 28 C.F.R. 20.33(a)(3) [1990]'s "state statute" requirement? [14]

In addressing this question, we first observe that the use of *subpoenae duces tecum* in the discovery process to obtain access to documents in the possession of persons who are not parties to the litigation—and the ability of a circuit court to determine the appropriateness of such *subpoenae*—is explicitly provided for in the *West Virginia Rules of Civil Procedure*, Rules 30(b)(1) [1988] and 45(b) [1988].

■ Second, we recognize that the *West Virginia Rules of Civil Procedure* have the force of a statute. Syllabus Point 3, *State v. Mason*, 157 W.Va. 923, 205 S.E.2d 819 (1974). That the *Rules* have the force and effect of a statute is unquestioned. *Criss v. Salvation Army Residences*, 173 W.Va. 634, 639, 319 S.E.2d 403, 408 (1984).

Third, looking at the purpose of the federal regulation in question, we believe that 28 C.F.R. 20.33 [1990] requires state "statutory" authority for criminal history record information dissemination for non-law enforcement purposes to guarantee that there are established governmental standards, controls, protections and oversight for such dissemination.

Measured against this standard, civil process pursuant to the *Rules* is an approved governmental mechanism, with standards, procedures and safeguards that can protect the important interests encountered in dealing with criminal history record information—and these procedures and safeguards have the force and effect of a statute. *State v. Mason, supra.*

Applying the foregoing reasoning, we conclude that a court order issued pursuant to the *West Virginia Rules of Civil Procedure* enforcing a *subpoena duces tecum* substantially meets the "statute" requirement of 28 C.F.R. 20.33 [1990], thereby permitting this Court to find that 20 C.F.R. 20.33 [1990] does

**13.** We proceed upon these premises (1) because the pleadings are not completely clear on what the parties' positions in this area are, although the respondent's arguments focus on her need for conviction information; (2) because it appears that neither the respondent's *subpoena duces tecum* nor the circuit court's order made either a state/national or a conviction/nonconviction distinction; (3) because our state statute which deals with criminal history record information does not make such distinctions; and (4) because it appears that both conviction and nonconviction data in Mr. Ruffin's state and national criminal history record information may be relevant to the issues between the parties in the underlying litigation.

Of course, nothing in this opinion will prohibit the circuit court or the respondent from appropriately narrowing the scope of any information sought or disclosed in the underlying proceeding, consistent with the principles enunciated herein.

**14.** The comments to 28 C.F.R. 20.21(b) [1977], the state CIB information dissemination regulation, state that a general public records/freedom of information law may be sufficient statutory authority for the dissemination of state CIB criminal history record information (nonconviction data). This comment indicates that "statutory" authorization for the dissemination of criminal history record information need not be specific in all instances.

not impose an absolute bar to the release of criminal history record information pursuant to such an order.[15]

### 3.
#### Constitutional Concerns and Equity

A third and important reason for not finding an absolute bar to the release of criminal history record information pursuant to a court order enforcing a *subpoena duces tecum* is evident when we consider and apply to the instant case the principles of constitutionally guaranteed access to the courts and of equity.

■ As the instant case illustrates, in a particular civil case the contents of a person's criminal history record information may be necessary to the fair resolution of significant issues in the litigation. In such a case, substantial injustice and unfairness might result from making potentially crucial information unavailable to litigants, by imposing an absolute bar on obtaining the information by the use of civil process pursuant to procedures authorized by the *West Virginia Rules of Civil Procedure*.[16]

■ *W.Va. Const.* Art. III, Sec. 17, provides in pertinent part that "[t]he courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law ..." and establishes our state constitutional right to access to the courts for the redress of grievances. *McClung v. Marion County Comm'n,* 178 W.Va. 444, 449, note 6, 360 S.E.2d 221, 226, note 6 (1987); *Deller v. Naymick,* 176 W.Va. 108, 115, note 14, 342 S.E.2d 73, 80, note 14 (1985). A severe limitation on a procedural remedy permitting court adjudication of cases implicates the certain remedy provision of Article III, Section 17 of the *West Virginia Constitution.* Syllabus Point 6, *Gibson*

*v. W. Va. Dept. of Highways,* 185 W.Va. 214, 406 S.E.2d 440 (1991).

Thus an absolute bar to obtaining criminal history record information through a *subpoena duces tecum* might in a particular case impermissibly burden an important constitutional right, by unreasonably denying a litigant the ability to use the process of the courts to obtain relevant evidence to prosecute or defend against a civil claim.

Considering both the constitutional reasonableness and the equity of imposing an absolute bar upon the respondent's obtaining the records in question, we note that the respondent Mills is clothed with the particular concern our law gives to the victims of crimes under the Victim Protection Act of 1984, *W.Va. Code* 61–11A–1 [1984] *et seq.*—because Ms. Mills is the "fiduciary of a deceased victim's estate ... [and] a member of a deceased victim's immediate family." *W.Va. Code,* 61–11A–2 [1984].

Thus it could run substantially counter to public policy if the application of an absolute bar to obtaining criminal history record information by *subpoena duces tecum* were to significantly impair Ms. Mills' ability to prosecute civil claims arising out of her late husband's murder, by effectively hiding the criminal record of his killer.

Notably, this Court has stated that even statutory prohibitions against the disclosure of information must yield to the constitutional rights of individuals.

In the related area of discovery in a criminal proceeding, we have held that statutory protections restricting the disclosure of information which impose a substantial burden upon a criminal defendant's right to a fair trial must yield to protection of the defendant's constitutional rights. *State v. Roy,* 194 W.Va. 276, 460 S.E.2d 277 (1995). In such cases, however, we have stated that it is appropriate to place the burden upon the

---

**15.** As to the additional language in the federal regulation, "and approved by the Attorney General of the United States," 28 C.F.R. 20.33(a)(3) [1990] we have no way of knowing whether the Attorney General will approve of a request by the Petitioners to the NCIC requesting national criminal history record information about Mr. Ruffin. That issue does not relate to or control our determination in the instant case.

**16.** We have traditionally given the *Rules* a liberal construction favoring broad discovery, because broad discovery policies are "essential to the fair disposition of both civil and criminal lawsuits." *State ex rel. U.S. Fidelity and Guar. Co. v. Canady,* 194 W.Va. 431, 444, 460 S.E.2d 677, 690 (1995).

party seeking the information to demonstrate a particularized need to disclose the information. *Id.* And we follow such an approach here.

In summary, constitutional and equitable principles provide strong support for the conclusion that there is not an absolute bar to obtaining criminal history record information by means of a court order enforcing a *subpoena duces tecum.*

### 4.

### *Privacy, Confidentiality and Burdensomeness*

Fourth, considerations of privacy, confidentiality and burdensomeness do not argue for an absolute bar on the release of such information pursuant to a court order enforcing a *subpoena duces tecum*—if such release is permitted only under exceptional circumstances, when there is a specific showing of need for the information's release, and when there is adequate protection for these important interests.

As to privacy and confidentiality, courts are well-versed in crafting appropriate limitations on the use of sensitive information, and we may presume that such expertise will be applied appropriately to criminal history record information in those rare cases where a court authorizes its release pursuant to a *subpoena duces tecum.* *See* discussion at note 17, *infra.*

As to burdensomeness, our statutes explicitly authorize the release of criminal record history information to such private parties as employers, with the consent of the person about whom the information is sought—and without a person's consent, upon request by government agencies for official reasons. *W. Va. Code,* 15–2–24(d) [1977].

These rather broad categories of individuals and agencies who are able to routinely obtain criminal history record information strongly suggest that in the rare case where a court order requires such information to be released to a non-governmental party, no undue burden will be imposed upon the petitioners.

For the foregoing reasons, we decline to find that there is an absolute bar to a law enforcement agency releasing criminal history record information about an individual who does not consent to the release of the information to a private litigant pursuant to a court order enforcing a *subpoena duces tecum* in a civil action.

### B.

### *Exceptional Circumstances*

The next issue which we must address is: if there is no absolute bar, what protections and constraints are necessary to protect the important confidentiality and privacy interests that are at stake in this area? Here we must be concerned with both the confidentiality and privacy interests of the individuals whose records may be sought,[17] and the important confidentiality and privacy interests of law enforcement agencies and their records.

We are especially concerned that the criminal history record information held by and available to the West Virginia State Police does not become open or subject to general "fishing expedition" *subpoenae duces tecum* issued in connection with ordinary civil litigation.[18]

To protect against such a result, we conclude that it is necessary to impose strict standards regarding the release of such information when release is sought by means

---

**17.** In *United States Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989), the Supreme Court held that an individual's right to privacy in an FBI criminal history record information outweighs society's interest in the release of the information to full public disclosure pursuant to a request under the Freedom of Information Act. The Court gave great weight to the individual privacy interests at stake as it conducted a balancing test pursuant to the FOIA.

**18.** We emphasize that a central factual issue in the underlying case appears to be: what are the contents of the criminal history record information that the trucking company would have seen, if the company had done a criminal history record information request or similar background investigation on Mr. Ruffin? Therefore, this is a different case than a civil litigant simply seeking criminal history record information on a potential witness.

of a court order enforcing a *subpoena duces tecum*.[19]

Therefore we hold that in the absence of exceptional circumstances, criminal history record information for an individual who does not consent to the release of the information may not be obtained by a *subpoena duces tecum* to a governmental or law enforcement agency issued at the request of a private party in civil litigation.

In determining whether exceptional circumstances exist that would permit a circuit court in the exercise of its discretion to enforce a *subpoena duces tecum* to a law enforcement or governmental agency in a civil action for criminal history record information regarding an individual who has not consented to the release of such information, a circuit court must consider: (1) whether the criminal history record information which the *subpoena duces tecum* seeks is essential to the party seeking the information in preparing and presenting their case; (2) whether the party seeking the information has exhausted all other reasonable avenues other than a *subpoena duces tecum* to a governmental or law enforcement agency for obtaining the criminal history record information which is sought; (3) whether there is a substantial possibility of injustice if the party cannot obtain the criminal history record information which is sought by the *subpoena duces tecum*; and (4) whether the party in possession of the criminal history record information and the person(s) about whom the information is sought have had a fair opportunity under the circumstances to present argument against the release of the information, and whether their privacy and confidentiality interests can be appropriately protected.

These four denominated areas of inquiry do not foreclose the circuit court from taking into account such other relevant considerations as it may see fit in the exercise of its discretion, to determine whether there are exceptional circumstances that warrant enforcing such a *subpoena duces tecum*.

If a circuit court concludes that exceptional circumstances exist permitting the enforcement of a *subpoena duces tecum* issued to a governmental or law enforcement agency for criminal history record information regarding an individual who has not consented to the release of such information, the circuit court must examine *in camera* any criminal history record information which is provided in response to such a *subpoena duces tecum*, before the information is given to the party who has had the *subpoena duces tecum* issued, so that the circuit court in its discretion may redact any sensitive or confidential information which clearly will not

---

19. In formulating an exceptional circumstances test for *subpoenae duces tecum* seeking criminal history record information, we draw upon the general principles which this Court has applied in considering the enforcement of *subpoenae duces tecum* generally. In this context, we have stated that:

> The courts will, on proper motion, refuse to enforce judicial subpoena duces tecum calling for the production of documents in absence of a showing that the documents sought are relevant and material to the matter in controversy and that proof is not otherwise practically available.

*State ex rel. Joint Committee on Government and Finance of West Virginia Legislature v. Bonar*, 159 W.Va. 416, 422, 230 S.E.2d 629, 632 (1976).

In *Ebbert v. Bouchelle*, 123 W.Va. 265, 267–68, 14 S.E.2d 614, 615 (1941), this Court discussed in the context of a civil case the showing that must be made to utilize a *subpoena duces tecum:*

There must be:

(a) A description of the writing, the production of which is sought, sufficient to identify it.

(b) A showing of the relevance and materiality of its contents to the matters in controversy in the pending case.

(c) The fact that the proof is not otherwise practically available.

We further stated in *State v. Harman*, 165 W.Va. 494, 505, note 5, 270 S.E.2d 146, 153, note 5 (1980):

> This quoted statement from *Bouchelle* is similar to the rule given in 1 Wright, *Federal Practice and Procedure (Criminal)* Sec. 274, regarding a subpoena duces tecum in a criminal case:
>
> "(1) That the documents are evidentiary and relevant; (2) That they are not otherwise procurable by the defendant reasonably in advance of trial by exercise of due diligence; (3) That the defendant cannot properly prepare for trial without such production and inspection in advance of trial and the failure to obtain such inspection may tend unreasonably to delay the trial; (4) That the application is made in good faith and is not intended as a general fishing expedition."

be of significance in the case before the court.

■ Additionally, the circuit court shall have wide discretion to impose an appropriate protective order to protect the privacy and confidentiality of the information provided in response to the *subpoena duces tecum,* while permitting the appropriately limited use of the information in connection with the pending litigation. Any person may file such pleadings as they deem appropriate to bring to the circuit court's attention any matters and concerns arising in connection with the enforcement of such a *subpoena duces tecum* or the information which is provided in response to the *subpoena duces tecum.*

## C.

### *The Instant Case*

■ Having established the foregoing standards, we turn to applying them to the facts of the instant case. With arguably privileged or otherwise presumptively nondisclosable materials, we must give a "hard and more stringent examination . . . to determine if the circuit court abused its discretion" in allowing access to the materials. Syllabus Point 5, in part, *State ex rel. USF & G v. Canady, supra.*

Here our inquiry comes to an abrupt halt—because we do not have enough information to make such an examination. In this original jurisdiction proceeding, we do not have the record from the underlying case. The contentions and apparent facts that we recite in this opinion are entirely taken from the rather meager pleadings submitted by the parties to this proceeding, and do not include any submissions by the defendants in the underlying case.

The circuit court, which had no guidance as to what standards to apply to the petitioner's motion to quash the *subpoena duces tecum,* did not make any factual findings or give a statement of reasons in its brief order denying the petitioners' motion. Nor do we have before us even a transcript of the hearing on the petitioners' motion to quash. While it appears that the circuit court, in deciding to enforce the respondent's *subpoena duces tecum,* may have employed an "exceptional circumstances" analysis similar to the approach we have set forth in this opinion, we cannot reach such a conclusion based on the scant information presented to us by the parties to this proceeding.

For example, on the issue of "exhausting other reasonable alternatives," it initially appears that the respondent has gone to great lengths to obtain the sought-after information—but to no avail. However, the respondent has also advised us in her pleadings that Mr. Ruffin's records would be released to the respondent by Maryland prison authorities upon their receipt of an appropriate Maryland court order.

We do not understand why the respondent did not seek to open an original jurisdiction proceeding in Maryland, based upon an appropriate circuit court order from West Virginia, to obtain Mr. Ruffin's records from the Maryland prison. Of course, we cannot tell how reasonable, burdensome, expensive or possibly even futile such an attempt would be. We must leave addressing such matters in the first instance to the circuit court.[20]

In summary, it appears that the circuit court may have properly exercised its discretion and in a *de facto* fashion permissibly determined that there were exceptional circumstances that justified enforcing the *subpoena duces tecum.* But we cannot reach such a conclusion from the limited record before us.

## IV.

### *Conclusion*

Because—on the record before us—we cannot say that the circuit court properly exercised its discretion and found exceptional circumstances that would justify enforcing the *subpoena duces tecum* in question, we are constrained to grant the writ as moulded.

---

**20.** We recognize that Ruffin's non-party status in the underlying case, coupled with his being in prison in another state, enormously impairs and complicates the ability of a West Virginia circuit court to compel Ruffin to answer questions or even to sign a release for his criminal history record information.

We prohibit the enforcement of the *subpoena duces tecum.* The respondent is free to present the issue of the enforcement of the *subpoena duces tecum* to the circuit court again for the court's reconsideration, applying the principles enunciated in this opinion.

Writ Granted as Moulded.