640 S.E.2d 540

Berchie Eugene BIAS and Patricia
Carol Bias, Plaintiffs,

v.

EASTERN ASSOCIATED COAL
CORPORATION,
Defendant.

No. 32778.

Supreme Court of Appeals of
West Virginia.

Submitted: Jan. 10, 2005.

Decided: June 8, 2006.

Concurring and Dissenting Opinion of
Justice Albright June 23, 2006.

Dissenting Opinion of Justice
Starcher July 13, 2006.

Concurring Opinion of Justice
Davis July 18, 2006.

Norman W. White, Brian L. Ooten, Shaffer & Shaffer, P.L.L.C., Madison, for Plaintiffs.

Ancil G. Ramey, H. Toney Stroud, Steptoe & Johnson, P.L.L.C., Charleston, for Defendant.

BENJAMIN, Justice:

The Circuit Court of Boone County has certified to this Court the following question of law:

Whether an employee who sustains a mental injury without physical manifestation and, as such, is precluded from receiving Workers' Compensation benefits pursuant to West Virginia Code § 23–4–1f, can maintain a common law negligence action against his employer, despite the immunity afforded by West Virginia Code § 23–2–6.

We answer the question in the negative.

## I.

### FACTS AND PROCEDURAL HISTORY

The pertinent facts related to the claims of plaintiff, Berchie Eugene Bias, are undisputed and are set forth in the circuit court's certification order:

This action arises as the result of an incident that occurred on September 18, 1999, at the Harris # 1 coal mine located in Boone County, West Virginia, owned and operated by the defendant. On this date, plaintiff, Berchie Bias and two other co-workers were assigned to install a belt take-up in a particular section of the mine. At approximately 10:00 a.m., the three workers observed a cloud of smoke approaching them and immediately called their supervisor for help from the emergency phone in the jeep they were using. Unbeknownst to the plaintiff and his co-workers at the time, the smoke was the result of belt slippage caused by a slip switch that had been short circuited. The defendant was issued a Federal citation for the short circuited switch. This slip switch, if operable, would shut down the belt in the event of belt slippage to prevent smoking or a possible fire.

Plaintiff and his co-workers were told by the supervisor to shut off the main belt, which was about 100 feet away through a cross cut. While his co-workers attempted to find fresh air, plaintiff went to shut down the main belt. After shutting down the belt, plaintiff indicated that thick smoke had gotten between him and the area in which he had been walking in, and therefore, he did not know where the escape ways were located. Plaintiff went through a door and into a return entry in the opposite direction from the smoke. Plaintiff alleges he knew the return would eventually have smoke in it because the ventilation system was not working properly and he was very afraid. Plaintiff walked down the return about 100 feet and then cut back towards the area in which he had been working in, and eventually ran into two mechanics who began walking him out of the mine. The three eventually ran into a jeep and were transported to the mouth of the entry. Plaintiff alleges he was trapped in the smoke for approximately an hour and a half (1½).

Plaintiff worked for the next two days and alleges on the third day he became very distraught. Plaintiff reported he was in a poor emotional state, having slept very little due to nightmares about being trapped in the mine. Plaintiff was transported to Charleston Area Medical Center and then transferred to Highlands Hospital, where he spent 9 days. Plaintiff subsequently brought this action, alleging that as a result of the aforementioned incident, he suffered various serious emotional injuries.

Plaintiff alleges that his employer, Eastern Associated Coal Company ("Eastern"), is liable for his emotional injuries under the "deliberate intention" exception to the West Virginia Workers' Compensation Act, W.Va. Code § 23–4–2 (1994), and also under the common law for its intentional and negligent infliction of such emotional injuries. In support of his motion for a pre-trial ruling that his common law negligence action can be maintained, plaintiff argues that because W.Va.Code § 23–4–1f (1993) precludes him from recovering compensation for his claimed "mental-mental" injuries [1] under the Workers' Compensation Act, the employer immunity provision of the Act, found at W.Va.Code § 23–2–6 (1991), does not apply. Eastern disagrees, contending that the immunity provision bars the plaintiff's civil negligence action for emotional distress despite there being no compensation available for the claimed injury under the Act.

In its Certification Order entered on February 17, 2004, the circuit court found for purposes of the order "that plaintiff can bring a common law negligence action against his employer." The court thereupon ordered that the question referenced above, together with the court's ruling regarding the question, be certified to this Court pursuant to Rule 13 of the *West Virginia Rules of Appellate Procedure*.

## II.

## STANDARD OF REVIEW

■ It is well-settled law that " '[t]he appellate standard of review of questions of law

answered and certified by a circuit court is *de novo.*' Syllabus point 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996)." Syl. Pt. 2, *Keplinger v. Virginia Elec. & Power Co.*, 208 W.Va. 11, 537 S.E.2d 632 (2000). *Accord* Syl. Pt. 1, *Perito v. County of Brooke*, 215 W.Va. 178, 597 S.E.2d 311 (2004); Syl. Pt. 2, *Charter Communications v. Community Antenna Serv. Inc.*, 211 W.Va. 71, 561 S.E.2d 793 (2002). Accordingly, we proceed to conduct a plenary review of the certified question.

## III.

## DISCUSSION

The parties agree with the acknowledgment in the certified question that W.Va. Code § 23–4–1f (1993) precludes an employee such as the plaintiff from receiving workers' compensation benefits for a so-called "mental—mental injury", i.e., a mental injury with a non-physical cause. They disagree as to whether W.Va.Code § 23–2–6 (1991) immunizes an employer against a civil negligence action brought by an employee who alleges a "mental—mental injury" which was incurred in the workplace. Plaintiff contends that the employer-immunity provision of W. Va.Code § 23–2–6 applies only when a workplace injury is compensable and benefits may be recoverable under the Workers' Compensation Act. Eastern, however, argues that W. Va.Code §§ 23–2–6 and 23–4–1f fully immunize it from all such workers' compensation claims and from all common law causes of action for such non-compensable "mental—mental" injuries, including, as here, a cause of action for negligent infliction of emotional distress where that claimed work-related injury is not compensable by virtue of W.Va. Code § 23–4–1f.

### A. Non–Compensable Psychiatric Injuries and Disease

We commence with a discussion of W.Va. Code § 23–4–1f (1993), in part, because Eastern contends that in addition to making so-called "mental-mental" claims non-compensable under the Workers' Compensation Act, the Legislature also evidenced an intent in

---

1. Non-physical, or "mental", injuries caused by non-physical, or "mental", causes.

enacting that section to preclude employees from pursuing common law actions for such injuries. We disagree and conclude that W.Va.Code § 23–4–1f (1993) cannot be read so broadly.

W.Va.Code § 23–4–1f was enacted as a part of Chapter 171, Acts, Regular Session, 1993, that was approved by the legislature on April 16, 1993. It provides:

> For the purposes of this chapter, no alleged injury or disease shall be recognized as a compensable injury or disease which was solely caused by nonphysical means and which did not result in any physical injury or disease to the person claiming benefits. It is the purpose of this section to clarify that so-called mental-mental claims are not compensable under this chapter.

The 1993 enactment of W.Va.Code § 23–4–1f was a legislative countermand of this Court's decision in *Breeden v. Workmen's Compensation Commissioner,* 168 W.Va. 573, 285 S.E.2d 398 (1981), which had held as stated in Syllabus Point 2: "An employee who sustains mental or emotional injury which occurs as a result of continuous and intentional harassment and humiliation from her supervisor extending over a period of time has suffered a personal injury as required by W.Va.Code § 23–4–1 (1981 Replacement Vol.)." [2] Despite its repudiation by the Legislature, *Breeden* is noteworthy in two respects. First, it recognized that an emotional injury is a personal injury for purposes of the Workers' Compensation Act. Second, it recognized that the infliction of emotional distress may be a compensable injury even though not accompanied by a physical injury, despite the fact that at the time of the *Breeden* decision, in 1981, it was the general rule that there was no common law cause of action in this State for the negligent infliction of emotional distress absent a physical injury. *Breeden,* 168 W.Va. at 577–78, 285 S.E.2d at 400–01.

Neither the title of the bill in which W.Va.Code § 23–4–1f was enacted, nor the text of that Code section indicates any expressed intent on the part of the legislature to immunize employers from a common law action which may have existed at the time of its passage for negligent infliction of emotional distress upon an employee when not accompanied by a physical injury. Eleven years following *Breeden,* but before the passage of W.Va.Code § 23–4–1f, our common-law departed from the requirement that emotional claims be manifested, at least in part, by demonstrable physical injuries. In *Marlin* we acknowledged that *Ricottilli v. Summersville Memorial Hospital,* 188 W.Va. 674, 425 S.E.2d 629 (1992), which this Court decided on December 18, 1992, five months before the enactment of W.Va.Code § 23–4–1f (1993), "represent[ed] a transition from our earlier law requiring that a claim for negligent infliction of emotional distress be accompanied by demonstrable physical injuries" and "a progression by this Court away from the requirement of a precedent physical injury in order to recover in cases involving negligent infliction of emotional distress." *Marlin,* 198 W.Va. at 651–52, 482 S.E.2d at 636–37. At the time of the passage of W.Va. Code § 23–4–1f (1993) on April 16, 1993, the Legislature not only had notice of, but, we believe, was fully aware of this Court's decision in *Ricottilli* and its transition from the general rule that a negligent infliction of emotional distress claim must be manifested by a physical injury. In view of this notice and awareness, we conclude that had the Legislature intended W.Va.Code § 23–4–1f to preclude any claims other than workers' compensation claims, the Legislature would have done so in clear language.

Because we conclude that the Legislature was fully aware of *Ricottilli* at the time of the passage of W.Va.Code § 23–4–1f, we find nothing in that statutory section to support Eastern's contention that W.Va.Code § 23–4–1f evidences any intention by the Legislature to affect any type of claims other than workers' compensation claims. Rather, we believe, W.Va.Code § 23–4–1f is a narrowly

---

**2.** In *Marlin v. Bill Rich Construction, Inc.,* 198 W.Va. 635, 650, 482 S.E.2d 620, 635 (1996), this Court observed that "in 1993, the West Virginia Legislature rejected [*Breeden's*] compensability of mental-mental claims when it added W.Va. Code § 23–4–1f to the workers' compensation statute."

drawn statute intended by the Legislature to focus solely on whether so-called psychological (or mental) claims can be compensable and whether workers' compensation benefits may be recoverable unless that psychological (or mental) claim is manifested, at least in part, by a demonstrable physical symptom or injury. As for immunity from common-law actions, this statutory section is silent. Any prohibition of such common-law actions must instead by found elsewhere in the law.[3]

### B. Employer Immunity and W.Va.Code § 23-2-6 (1991)

Consideration of whether an employee who sustains a mental injury without physical manifestation may maintain a common law negligence action against his employer necessarily must be resolved by application of W.Va.Code § 23-2-6 (1991). This Code section provides in relevant part that "[a]ny employer subject to this chapter who shall subscribe and pay into the workers' compensation fund the premiums provided by this chapter or who shall elect to make direct payments of compensation as herein provided shall not be liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring." This immunity language was a part of the original workers' compensation law, Acts 1913, Ch.10, § 22 and has not been substantively changed since 1913 in the various reenactments of the Code section in which it appears.

The Legislature intended for W.Va.Code § 23-2-6 (1991) to provide qualifying employers sweeping immunity from common-law tort liability for negligently inflicted injuries. As this Court succinctly stated in State

ex rel. Frazier v. Hrko, 203 W.Va. 652, 659, 510 S.E.2d 486, 493 (1998), "[w]hen an employer subscribes to and pays premiums into the Fund, and complies with all other requirements of the Act, the employer is entitled to immunity for any injury occurring to an employee and 'shall not be liable to respond in damages at common law or by statute.' W.Va.Code § 23-2-6 [1991]." This immunity is not easily forfeited. As suggested in *Smith v. Monsanto Company*, 822 F.Supp. 327, 330 (S.D.W.Va.1992), "an employer who is otherwise entitled to immunity under § 23-2-6 may lose that immunity in only one of two ways: (1) by defaulting in payments required by the Act or otherwise failing to comply with the provisions of the Act, see W.Va.Code § 23-2-8, or (2) by deliberately intending to produce injury or death to the employee."[4] (Citation omitted.)

■ While exceptions to the immunity provided by W.Va.Code § 23-2-6 exist, the Legislature has been extremely restrictive in creating them.[5] An employer who defaults on its payments as required by the Workers Compensation Act or is otherwise out of compliance with the Act has no immunity according to the plain language of W.Va.Code § 23-2-6. An employer is likewise not immune from lawsuit for workplace injuries if the employer "acted with deliberate intention" as provided in W.Va.Code § 23-4-2. An employer is also not immune from liability for certain other intentional actions, such as discriminatory practices as provided in W.Va. Code § 23-5A-1 *et seq.* and in The West Virginia Human Rights Act, W.Va.Code § 5-11-1 *et seq.*[6]

---

**3.** It is perhaps not surprisingly that W.Va.Code § 23-4-1f is silent as to employer immunity in view of the language in W.Va.Code §§ 23-2-6 and 23-4-2(d)(1) and (2). *See note 12 infra.*

**4.** Deborah A. Ballam, *The Workers' Compensation Exclusivity Doctrine: A Threat to Workers' Rights Under State Employment Discrimination Statutes,* American Business Law Journal, 95, 102–106 (Spring, 1989), describes the exclusivity doctrine as being the "Sacred Cow of Workers' Compensation" stating that "most courts and state legislatures have vigorously protected the concept of employer immunity by aggressively promoting the exclusivity doctrine, even in cases where the injury did not arise from normal incidents of the employment. Courts have protected the doctrine

by refusing, for the most part, to allow judicially created exceptions, while the legislatures have protected the doctrine by reacting with legislation repealing the few efforts the courts have made to reduce its scope."

**5.** *See, generally,* Davis, Robin J. & Louis J. Palmer, Jr., *Workers' Compensation Litigation in West Virginia: Assessing the Impact of the Rule of Liberality and the Need for Fiscal Reform,* 107 W.Va. LR 43, 62 (2004).

**6.** "While an aggravation or worsening of an employee's physical injury by the conduct of his/her employer may be compensable under and thus subject to, the exclusive remedy provided by the

Plaintiff argues that our decision in *Jones v. Rinehart & Dennis Company, Inc.*, 113 W.Va. 414, 168 S.E. 482 (1933), supports his position that because his claimed mental injury without physical manifestation is not compensable by reason of W.Va.Code § 23-4-1F, his employer should not be immune to a common law negligence action for that injury under W.Va.Code § 23-2-6. Specifically, plaintiff contends that in *Jones*, which considered the disease of silicosis, this Court created another exception to W.Va.Code § 23-2-6 (1923) for injuries such as he claims here. We disagree. Even if *Jones* had not been legislatively nullified by subsequent statutory enactments, plaintiff's injury claim herein is not of a type similar to the disease claim present in *Jones*.[7]

In *Jones*, this Court, in 1933, distinguished between work-related harm which was caused by a definite, isolated, fortuitous occurrence, for which the workers' compensation system had originally been enacted,[8] and a disease such as silicosis, which was caused by exposure to silica extending through a long period of employment, which was not of a type originally cognizable under W.Va.Code § 23-4-1. In view of the Legislature's original decision for the workers' compensation system, by way of W.Va.Code § 23-4-1 (1923), to recognize only work-related injuries and diseases which were caused by definite, isolated fortuitous events, the *Jones* Court concluded that the immunity provisions of W.Va.Code § 23-2-6 were only applicable to such injuries and diseases, since they were all that was then cognizable under W.Va.Code § 23-4-1 (1923). Since silicosis was not a disease which was then cognizable

under W.Va.Code § 23-4-1 (1923), the *Jones* Court held in its Syllabus Point 4 that employers "are not exempt from liability for non-compensable disease (caused by negligence of the employer) or death resulting from such disease."

The holding of the *Jones* Court was effectively annulled in 1945, by the Legislature's subsequent decision to amend W.Va.Code § 23-4-1 to recognize the disease of silicosis. Four years later, in 1949, the Legislature expanded W.Va.Code § 23-4-1 to recognize "other occupational diseases" which might occur in the workplace so long as the injury or disease occurred both in the course of and resulting from a claimant's employment. As we stated in *Powell v. State Workmen's Comp. Comm'r.*, 166 W.Va. 327, 273 S.E.2d 832 (1980), occupational diseases other than those specifically listed have been covered by W.Va.Code § 23-4-1 since it was amended by the Legislature in 1949. *See, also, Miles v. State Compensation Comm'r.*, 136 W.Va. 183, 67 S.E.2d 34 (1951). Thus, the reasoning from *Jones* which the plaintiff urges upon us was legislatively nullified.

Even if such reasoning were still valid, the so-called "mental-mental injury" at issue herein, occurring within a period of 90 minutes or so, was not at all similar to the slowly developing kind of disease at issue in *Jones*. Rather, it was apparently caused by a "definite, isolated, fortuitous, occurrence" when plaintiff was trapped in a smoky environment within a mine. As such, the type of claim at issue here is much more like that of a typical injury claim, than that in the *Jones* case. The employer immunity provisions of W.Va.

---

Workers' Compensation Act, an employee's claim against an employer for violation of the West Virginia Human Rights Act and resulting non-physical injuries, such as mental and emotional distress and anguish, directly and proximately resulting from such violation and not associated with the physical injury or the aggravation or worsening thereof are not barred by the exclusivity provisions of the Workers' Compensation Act." Syl. Pt. 4, *Messer v. Huntington Anesthesia Group, Inc.*, 218 W.Va. 4, 620 S.E.2d 144 (2005).

7. W.Va.Code § 23-4-1 was amended by the Legislature in 1945 to recognize silicosis as an "injury" or "personal injury" for purposes of compensability and benefits determinations within

the workers' compensation system. W.Va.Code § 23-4-1 was further amended by the Legislature in 1949 to recognize "other occupational diseases" as injuries for purposes of compensability and benefits determinations within the workers' compensation system.

8. The Court cited as an example of such an injury/disease caused by a "sudden, isolated, fortuitous occurrence", the facts in *Conley v. State Compensation Comm'r.*, 107 W.Va. 546, 149 S.E. 666 (1929). There, an employee experienced nervousness and headache requiring him to cease work as the result of carbon monoxide poisoning stemming from his soldering of spouting with a gasoline soldering torch.

Code § 23–2–6 always have been applicable to such claimed injuries.

Nor is plaintiff's attempt to invoke *Jones* helped by *Breeden.* In its Syllabus Point 2, the *Breeden* Court held that a mental or emotional injury *is* a "personal injury" for purposes of the Workers' Compensation Act. *Breeden* therefore removes any doubt that, as of 1983 when *Breeden* was decided, psychological (or mental) claims were of a type cognizable under W.Va.Code § 23–4–1.[9] In later enacting W.Va.Code § 23–4–1f, the Legislature did not eliminate psychological (or mental) claims from the workers' compensation system. It simply forbid making such claims compensable and paying benefits when no physical harm was manifested. The type of injury present in *Jones* and the rationale used by the Court in *Jones* simply is not present here. By its terms, the employer immunity provision of W.Va.Code § 23–2–6 is applicable to such an injury and has been so since the Workers' Compensation Act was enacted.

The Legislature has gone further in setting forth a broad exclusion for employers from common-law negligence actions for work-related injuries to employees. In 1983, the Legislature made perfectly clear its intent that the employer immunity provided by W.Va.Code § 23–2–6 was sweeping when it enacted what is now W.Va.Code § 23–4–2(d)(1) and (2).[10] Therein, the Legislature stated:

> [T]he immunity established in sections six and six-a, article two of this chapter is an essential aspect of this workers' compensation system .... [T]he intent of the Legislature in providing immunity from common lawsuit was and is to protect those immunized from litigation outside the workers' compensation system except as expressly provided in this chapter .... The immunity from suit provided under this section and under sections six and six-a, article two of this chapter, may be lost only if the employer or person against whom liability

is asserted acted with "deliberate intention".

W.Va.Code §§ 23–4–2(d)(1) and (2) (2005). Our Legislature has thus instructed the Court that we are not to read into the immunity provision of W.Va.Code § 23–2–6 an exception not "expressly provided [by the legislature] in this chapter."

W.Va.Code § 23–2–6 expressly provides employers with "immunity from common lawsuit" and "litigation" for common-law claims, such as the so-called "mental-mental" negligence claim asserted herein by plaintiff. We conclude that the Legislature intended for W.Va.Code § 23–2–6 to provide qualifying employers with a sweeping immunity from common-law tort liability for negligently caused work-related injuries. We are compelled to respect this intention and apply the plain language of W.Va.Code 23–2–6.

■ We therefore hold that an employer who is otherwise entitled to the immunity provided by W.Va.Code § 23–2–6 (1991) may lose that immunity in only one of three ways: (1) by defaulting in payments required by the Workers' Compensation Act or otherwise failing to be in compliance with the Act; (2) by acting with "deliberate intention" to cause an employee's injury as set forth in W.Va. Code § 23–4–2(d); or (3) in such other circumstances where the Legislature has by statute expressly provided an employee a private remedy outside the workers' compensation system. Compensability of a claimed injury and the immunization of an employer from litigation therefore are independent of one another. An employee who is precluded by W. Va.Code § 23–4–1f (1993) from receiving workers' compensation benefits for a mental injury without physical manifestation cannot, because of the immunity afforded employers by W.Va.Code § 23–2–6 (1991), maintain a common law negligence action against his employer for such injury.

**9.** We also note that the question certified itself refers to the occurrence at the heart of the certified question herein as an "injury."

**10.** What is presently subsection (d)(1) and (2) of W. Va.Code § 23–4–2 was subsection (c)(1) and

(2) in the 1983 enactment. Except for the change in the subsection designation, the substance of the 1983 enactment then contained in subsection (c)(1) and the first paragraph of subsection (c)(2) has not been changed since then.

## IV.

## CONCLUSION

For the reasons set forth herein, we answer the certified question in the negative. If we were to answer the question in the affirmative, this Court would improperly exercise a legislative function by reading into W.Va.Code § 23–2–6 an exception to the sweeping immunity provided which the Legislature chose not to provide therein. Under our system of government, the Legislature is a coordinate branch of government and is empowered to make law and establish public policy in conformity with the federal and state constitutions. The question certified to us presents no constitutional issue and the parties have not asserted one. This Court's response is limited to the narrow statutory question certified.

Certified Question Answered.

ALBRIGHT, Justice, concurring, in part, and dissenting, in part.

### (Filed June 23, 2006)

I concur with the conclusion reached by the majority that West Virginia Code § 23–4–1f(1993) (Repl.Vol.2005) solely addresses the compensability of mental-mental claims [1] and, because of its limited scope, does not answer the question certified to this Court as to whether a common law negligence action can be maintained by an employee who sustains a mental injury that lacks an accompanying physical manifestation. Following that conclusion, however, I part ways with the both the reasoning and the ultimate conclusion reached by the majority that the immunity extended to employers subscribing to the state workers' compensation system under the provisions of West Virginia Code § 23–2–6 (2003) (Repl.Vol.2005) bars a common law negligence action for a mental-mental claim.

The analysis employed by the majority to conclude that the statutory provision extending immunity to subscribing employers bars recovery for a mental-mental claim under common law negligence principles is easily dismantled. To reach its conclusion, the majority attempts to distinguish settled case law that actually supports the existence of a common law mental-mental claim and emphasizes the limited statutory exclusions to employer immunity. Critically absent from the majority's analysis, however, is any reference to the "quid pro quo" nature of workers compensation.[2] The question of whether a remedy exists for a mental-mental claim—a claim that currently exists under the common law of this state [3]—must include a balanced consideration of the "quid pro quo" bargain which undergirds the workers compensation schema. Only then can the question of an available remedy be definitively answered.

The author of the majority opinion recently revisited the origins of workers' compensation in *Messer v. Huntington Anesthesia Group, Inc.*, 218 W.Va. 4, 620 S.E.2d 144 (2005). Explaining the tradeoffs involved, this Court observed:

"The benefits of this system accrue both to the employer, who is relieved from common-law tort liability for negligently inflicted injuries, and to the employee, who is assured prompt payment of benefits." ... "That philosophy has commonly been described as a *quid pro quo* on both sides: in return for the purchase of insurance against job-related injuries, the employer receives tort immunity, in return for giving up the right to sue the employer, the employee receives swift and sure benefits."

*Messer*, 218 at 9, 620 S.E.2d at 149 (quoting *State ex rel. Abraham Linc Corp. v. Bedell*, 216 W.Va. 99, 103, 602 S.E.2d 542, 546 and n. 7 (2004)) (citations omitted). At the heart of any workers' compensation schema is a recognition that in exchange for extending stat-

---

**1.** By this, I am referring to a mental injury that is independent of either a physical injury or manifestation.

**2.** *See Smith v. Monsanto Co.*, 822 F.Supp. 327, 330 (S.D.W.Va.1992) (recognizing that benefits of employer immunity accrue both to employer, who is relieved from common-law tort liability

for negligently inflicted injuries, and to employee, who is assured prompt payment of benefits).

**3.** *See Marlin v. Bill Rich Constr. Inc.*, 198 W.Va. 635, 482 S.E.2d 620 (1996); *Ricottilli v. Summersville Memorial Hosp.*, 188 W.Va. 674, 425 S.E.2d 629 (1992).

utorily designated benefits for workplace injuries, an employer gains a guarantee that this statutory system of recovery is the exclusive means for compensating his/her employees, barring any statutory exceptions. *See* W.Va.Code § 23–2–6; *see generally Larson's Workers' Compensation Law* § 100.01 (discussing *quid pro quo* nature of workers' compensation).

While the exclusive nature of workers compensation recovery passes intellectual muster where the injury is compensable, a different result obtains when the injury is expressly excluded from recovery under a statutory system of benefits. In those instances, the foundational predicate for the exclusivity doctrine—the *quid pro quo*—is noticeably missing. In recognition of this void, a leading commentator and authority in the area of workers' compensation has posited that "it ought logically to follow that the employer should be spared damage liability only when compensation liability has actually been provided in its place, or," stated differently, "rights of action for damages should not be deemed taken away except when something of value has been put in their place." *Larson's, supra*, at § 100.04.

This rationale—that exclusivity only exists where coverage exists—has been relied upon by numerous courts to permit recovery. To illustrate, in *Kleinhesselink v. Chevron*, 277 Mont. 158, 920 P.2d 108 (1996), the court held that because the workers' compensation act expressly excluded emotional and mental stress injuries, an employer was not protected for tort liability for claims based on such injuries. The same result obtained in *Perodeau v. City of Hartford*, 259 Conn. 729, 792 A.2d 752 (2002), where the court ruled that the exclusivity provision of the workers' compensation act did not bar the plaintiff's claim for intentional infliction of emotional distress because that type of claim was expressly excluded from compensability under the act. *See also Acevedo v. Consol. Edison Co.*, 151 Misc.2d 347, 572 N.Y.S.2d 1015 (1991) (holding that plaintiffs' claims for medical monitoring were not barred by exclusiveness doctrine since claims of that sort fall outside jurisdiction of workers' compensation); *see*

additional cases at *Larson's, supra,* § 100.04D.

Interestingly, this same rationale was applied by the author of the majority to reason in *Messer* that the exclusivity provision of the workers' compensation act[4] was inapplicable with regard to claims for injuries caused by unlawful discriminatory acts where those injuries "are of a type not otherwise recoverable under the Workers' Compensation Act." 218 W.Va. at 6, 620 S.E.2d at 146, syl. pt. 4, in part. Critical to the decision in *Messer* was the unavailability of compensation for injuries such as mental and emotional distress and anguish that were not associated with a physical injury. *Id.* at 21, 620 S.E.2d at 161. Relying on the fact that the "Legislature did not intend such injuries to fall within the types of injuries for which the Workers' Compensation Act was established," the Court found the exclusivity provision not to bar an action outside the confines of the workers' compensation schema. *Id.* at 20, 620 S.E.2d at 160. Instead of recognizing that the reasoning employed in *Messer* would analogously compel the conclusion that recovery could exist for a mental-mental claim outside the area of workers' compensation, the majority downplayed the significance of that decision by relegating its citation to a footnote and omitting any discussion of the reasoning applied in that case.

In contrast to its treatment of *Messer*, the majority squarely, but incorrectly, confronted the existence of an earlier decision of this Court which clearly held that recovery for workplace injuries not encompassed within the workers' compensation act could be sought under common law principles. In *Jones v. Rinehart & Dennis Co.*, 113 W.Va. 414, 168 S.E. 482 (1933), this Court ruled that compensation for the disease of silicosis could be sought against an employer outside the workers' compensation act. That decision was predicated on the fact that the workers' compensation system, as it existed at that time, provided compensation only for work-related injuries caused by definite, isolated events. *Id.* at 423, 168 S.E. at 486. Based on the non-inclusion of silicosis as a

---

4. *See* W.Va.Code § 23–2–6.

compensable injury under the previous, narrower definition of injury that involved a specific and definite event, this Court ruled in *Jones* that the exclusivity provision of the workers' compensation act was inapplicable.

The majority simply "reasons away" the applicability of the *Jones* case by suggesting that, due to the later amendment of the workers' compensation statutes to include occupational diseases such as silicosis, the holding in that case has been legislatively nullified. What the majority fails to comprehend is that the key component of *Jones* as controlling precedent is not the literal holding that the exclusivity provision is inapplicable to silicosis claims, but more importantly the reasoning employed by this Court to reach that decision. Rather than focusing on the narrow issue of whether silicosis claims are within the legislative ambit of compensable workers' compensation claims, what the majority should have examined in deciding whether the reasoning of *Jones* is still controlling was the analysis the Court used to determine that the workers' compensation exclusivity provision was not a bar to a common law claim in that case.

Critically, the reasoning employed in *Jones* is on all fours with the analysis that Larson identifies in his worker's compensation treatise and that courts around the country have employed to allow common law suits where injuries are not of the type compensable under the applicable statutory scheme. In determining whether a common law suit could be maintained for silicosis, this Court determined in *Jones* that the statutory language which affords immunity to subscribing employers ("is not liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring")[5] "must not be determined from its cold phraseology alone."[6] 113 W.Va. at 419, 168 S.E. at 484. Rejecting outright the contention that "an action for damages by an employee against an employer for injury arising from the employment may not be

maintained [outside the statutory scheme] even though such injury or disability is not compensable," this Court determined that the meaning of the immunity provision had to be resolved in conjunction with additional relevant indicia of intent:

> Consideration must be given to the background and purpose of compensation acts, to the evils sought to be corrected and the objects to be attained; to the rules of the common law with relation to right of action for industrial injuries and diseases, both occupational and otherwise; to the legislative history of our own act; and to all portions of the act which may be of assistance in determining the legislative intent . . . .

*Id.* at 419, 168 S.E. at 484.

Of import to this Court in *Jones* was the precept that a "right of action is [not to be] taken from employees unless the statutory language is clear and concise and not subject to any other reasonable construction." 113 W.Va. at 425, 168 S.E. at 487. Stressing that where two statutory constructions are available, courts prefer to choose the construction that does not take away a right and the means of obtaining redress for its breach, the Court in *Jones* concluded that the immunity provision set forth in West Virginia Code § 23–2–6 only exempted employers from liability at common law or by statute for compensable injury or death but not for non-compensable disease. 113 W.Va. at 426, 168 S.E. at 487.

The reasoning employed in *Jones*—that immunity is only extended to compensable injuries—was recently recognized in *Ball v. Joy Manufacturing Co.*, 755 F.Supp. 1344 (S.D.W.Va.1990), *aff'd*, 958 F.2d 36 (4th Cir. 1991), when the federal district court was asked to decide whether workers exposed to toxic chemicals had a common law claim for emotional distress. In *Ball*, the district court found the reasoning of *Jones*, despite

---

5. W.Va.Code § 23–2–6.

6. The Court acknowledged in *Jones* that if this language were viewed in isolated fashion, without reference to legislative intent or the history of worker's compensation, then no recovery could be sought outside the workers' compensation

scheme for injuries in those instances where compensation was not provided under the statutory scheme. 113 W.Va. at 419, 168 S.E. at 484. Importantly, this interpretation of the immunity language was expressly rejected in *Jones*.

the passage of time, to be germane based on the fact that the Legislature had not adopted any measures to refute this Court's interpretation that the immunity extended by West Virginia Code § 23–2–6 to subscribing employers is not applicable where the injuries at issue are outside the coverage of the workers' compensation act.[7]

While not directly citing *Jones*, this Court closely followed its reasoning in *Messer*. Starting with the proposition that "the most significant word in the exclusivity provision of W.Va.Code § 23–2–6 . . . is the term 'injury,'" this Court found that "other provisions of the Workers' Compensation Act [are required] to determine the Legislature's intent in defining what is and is not a compensable 'injury' for purposes of the exclusivity provision." 218 W.Va. at 11, 620 S.E.2d at 151. Expressly citing the adoption of West Virginia Code § 23–4–1f, which exempts mental-mental claims from being compensable injuries, this Court emphasized in *Messer* that the Legislature intended that certain work-related injuries and diseases are outside the meaning of the term "injury." Concluding that the extension of immunity to employers under West Virginia Code § 23–2–6 is controlled by the definition of the term "injury," the Court in *Messer* found that the "list of work-related injuries exempted from the provisions of the Workers' Compensation Act" (expressly referencing mental-mental claims) directly correlated to the availability of the immunity provision. 218 W.Va. at 11, 620 S.E.2d at 151. Under this Court's analysis in *Messer*, the existence of a qualifying compensable injury within the meaning of workers' compensation law is coterminous with the extension of immunity to employers. Just as in *Jones*, this Court reasoned in *Messer* that where the worker's injuries "are of a type not otherwise recoverable under the Work-

ers' Compensation Act . . . the exclusivity provision of the Workers' Compensation Act is inapplicable." *Messer*, 218 W.Va. at 6, 620 S.E.2d at 146, syl. pt. 4, in part.

Within less than a year of the issuance of *Messer*, the opinion of this Court has inexplicably shifted 180 degrees. Whereas, this Court previously took the view that the immunity afforded to subscribing employers under the exclusivity provision of the workers' compensation act could only be invoked in connection with injuries for which recovery was available under the act,[8] now the tides have changed and employers are granted immunity irrespective of compensability. Significantly, the majority has failed to persuasively identify any legitimate basis for this drastic shift in statutory construction.

In addition to its failed attempt at distinguishing *Jones*, the majority also falls short in its emphasis on the language of West Virginia Code § 23–4–2(d)(1) as support for its conclusion. While that statement of legislative intent addresses when immunity from suit can be lost by an employer, it does not address the parameters regarding the existence of immunity in the first instance. That matter is solely controlled by West Virginia Code § 23–2–6. If an injury that is covered under the act is the predicate basis for invoking an employer's immunity (which was always the position of this Court before *Bias* ), then the absence of such a predicate arguably prevents the immunity provision from operation. The majority goes seriously astray by hanging its analysis on the fact that under West Virginia Code § 23–4–2(d)(1) immunity can be lost in only one of three ways. What the majority fails to recognize is that the issue under discussion is not the *loss* of immunity but the *existence* or applicability of immunity in the first instance. These are two distinct issues; a fact which the majority

---

7. While the majority suggests the adoption of language found in West Virginia Code § 23–4–2(d)(1) addressing the intent of chapter four is specific evidence of legislative action aimed at countering the rationale employed in *Jones*, that language does not expressly address the availability of immunity to an employer despite the existence of non-compensable injury or disease. Barring such a clear statement of legislative intent, the issue of immunity for non-compensable claims remains subject to judicial interpretation.

8. *See* Annotation, *Workmen's Compensation Act as exclusive of remedy by action against employer for injury or disease not compensable under act*, 100 A.L.R. 519 (1936) and (WL Supp.2006) (recognizing that West Virginia and many other states interpret exclusivity provision of workers' compensation act as granting immunity from common law suit only when workplace injury is compensable).

fails to grasp. If no immunity attaches due to the injury being outside the act, the provisions that control the loss of employer immunity are of no consequence.

Nowhere in its opinion does the majority address the issue of whether there are due process implications in denying a remedy for an existing right. This Court has recognized that "[t]he *quid pro quo* for the employees is the guarantee that they will be afforded due process, and proper restitution for injuries they receive in their line of work." *Javins v. Workers' Comp. Comm'r,* 173 W.Va. 747, 758, 320 S.E.2d 119, 131 (1984). Under the majority opinion, employees are now left without a remedy for mental-mental claims that come within the parameters of those claims that we have previously recognized [9] as viable independent from physical injury. And, by completely denying employees a cause of action for qualifying mental-mental claims, "a wrong could be inflicted for which no remedy would lie, a circumstance that 'is contrary to the traditional policy of the common law.'" *Farley v. Sartin,* 195 W.Va. 671, 681, 466 S.E.2d 522, 532 (1995) (quoting *Baldwin v. Butcher,* 155 W.Va. 431, 444, 184 S.E.2d 428, 435 (1971)); *see also Smothers v. Gresham Transfer, Inc.,* 332 Or. 83, 23 P.3d 333 (2001) (finding that exclusive remedy provisions of workers' compensation statute which operated regardless of whether claim was compensable were unconstitutional based on the denial of remedial process).

The decision reached by the majority flies in the face of the fact that non-physical harms have been recognized as "[a]n increasingly important category of work-related injuries supporting tort suits." Larson, *supra,* at § 100.04. Despite the fact that these non-physical claims, which include mental-mental injuries, are increasingly recognized as a by-product of the modern workplace, the majority has seemingly turned its collective back on such claims. Because this Court has failed to offer a credible and convincing analysis for the directional change in statutory construction and has only overruled *Jones sub silentio,* I must respectfully dissent.

9. *See supra* note 3.

I am authorized to state that Justice Starcher joins in this separate opinion.

STARCHER, J., dissenting.

(Filed July 13, 2006)

The majority's opinion is, without a doubt, the opinion I have most disagreed with in all my years on this Court. The opinion is a remarkable alignment of bad reasoning, bad policy and skewed legal research, topped off with a dose of faint-heartedness about the role of the courts in a three-branch constitutional government. I cannot begin to fathom or attempt to describe what may have motivated the majority's decision. I join Justice Albright's separate opinion, but I am impelled by the injustice of the majority's opinion to write separately and emphasize some of the many reasons why the majority's opinion is dead wrong.

I begin with the most obvious error: the majority opinion sets West Virginia's workers' compensation and common law on a course that is almost wholly different from that of every other state in the nation. Arthur and Lex Larsons' *Larson's Workers' Compensation Law*—the leading summary of the nationwide state of workers' compensation law since the 1950s—makes it clear that workers' compensation is a tit-for-tat, *quid pro quo* system: the employee gives up a common law cause of action only when it is replaced with a statutory workers' compensation remedy. If there is no *quid pro quo* within the workers' compensation system to counter a worker's loss of the right to sue, then states allow the worker to proceed with a common law tort action. The majority opinion ignores the leading scholars on this issue, and charts a different course.

Professors Larson summarize the last century of workers' compensation law this way:

The compensation remedy is exclusive of all other remedies by the employee ... *if* the injury is within the coverage formula of the act. If it does not, as in the case where occupational diseases were deemed omitted because not within the concept of accidental injury, the compensation act

does not disturb any existing remedy.[1]

The Larson treatise then goes into further detail on the *quid pro quo* nature of the law, emphasizing that a cause of action is not deemed taken away unless a comparable remedy is created by the workers' compensation act:

> If ... the exclusiveness defense is a part of the *quid pro quo* by which the sacrifices and gains of employees and employers are to some extent put in balance, it ought logically to follow that the employer should be spared damage liability only when compensation liability has actually been provided in its place[.]
>
> [To] state the matter from the employee's point of view, rights of action for damages should not be deemed taken away except when something of value has been put in their place.[2]

Finally, the Larson treatise makes clear that if a mental injury is caused by an employer, and if that harm is not compensable under workers' compensation, the accepted rule nationwide is that the employee may pursue a common-law action against the employer for mental distress damages:

> An increasingly important category of work-related injuries supporting tort suits is that of nonphysical harms, in which compensation coverage fails because the essence of the harm is not physical injury. ... Another category is that of mental injury claims in the handful of states that have severely limited or barred altogether

the recovery of workers' compensation benefits for stress-related and other non-physical injuries.[3]

The argument of the leading scholars in this field can be summarized thusly: an exclusive remedy statute (like *W.Va.Code*, 23-2-6) bars an emotional distress cause of action only if the Legislature has provided a workers' compensation remedy. In the absence of a workers' compensation remedy, the worker may pursue a common-law cause of action.

The majority opinion is directly contrary to these principles. The majority opinion sets West Virginia's common law on a course that is totally at odds with what courts are doing in just about every other jurisdiction in America. And the majority opinion is not only contrary to these principles, the opinion doesn't even mention their existence.

Let me turn, for a moment, to this Court's decision in 1933 in *Jones v. Rinehart & Dennis*, 113 W.Va. 414, 426, 168 S.E. 482, 487 (1933), and the majority opinion's manhandling of that seminal case. In that case, this Court held that if an injury was not covered by workers' compensation (in *Jones*, the injury was silicosis), then the injured worker could pursue a lawsuit for damages if the employer caused the injury by negligence. Compilations of cases on exclusive remedy statutes issued in 1936 and 1939 found that *Jones v. Rinehart & Dennis* was the majority rule, and was in harmony with the "great weight of authority."[4] Yet the majority

---

**1.** 6 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law*, § 100.01 at 100–1 [2006] (emphasis added).

**2.** *Id.*, § 100.04 at 100–23 (quotations and footnotes omitted).

**3.** *Id.* at 100–29. The treatise goes on to give the following dead-on-point example:

> The situation in Montana demonstrates what can happen when an activist legislature decides to eliminate recovery for these sorts of [purely mental-injury] claims. In one case [*Onstad v. Payless Shoesource*, 301 Mont. 259, 9 P.3d 38 (2000)], a Montana shoe clerk who suffered severe mental trauma following a sexual assault by an intruder at the shoe store was allowed to recover [compensable damages] ... from her former employer due to its negligence in failing to maintain a safe work environment. ...

> [The] state's supreme court reiterated that the Montana legislature had expressed its clear intent to exclude both "mental-mental" and "mental-physical" claims from compensability under the workers' compensation system. Since those sorts of claims were now outside the compensation bargain, they were clearly *inside* the domain of the tort world.
>
> *Id.* at 100–29 to—30.

**4.** *See* 100 A.L.R. 519 (1936), "Workmen's Compensation Act as exclusive of remedy by action against employer for injury or disease not compensable under act;" and 121 A.L.R. 1143 (1939), "Workmen's compensation act as exclusive of remedy by action against employer for injury or disease not compensable under act" ("In harmony with the great weight of authority as shown in the earlier annotation, it was held in the following later cases ... that the workmen's compensation acts did not constitute an exclusive

opinion now finds—without citing *any* legal authority—that *Jones* was an aberration in American jurisprudence.

The majority opinion concludes that *Jones v. Rinehart & Dennis Co.* was "effectively annulled in 1945" when the Legislature amended the workers' compensation laws to make silicosis compensable, and the majority opinion just happened to be the first court in the seventy-three years since *Jones* was issued to recognize that annulment. This might be the greatest leap of jurisprudential logic I think I've ever encountered. Silicosis certainly became compensable in West Virginia after *Jones* was issued—but in 1935, not 1945, as the majority opinion claims.[5] But while silicosis was made compensable, many other injuries—such as black lung or asbestosis or hearing loss or emotional distress—were not compensable until many decades later. The reasoning of *Jones,* just like the reasoning of the courts in every other state in the union, was and is still valid: if an injury was excluded from coverage under the workers' compensation system, then a worker's right to pursue a common-law cause of action was preserved.

What the majority opinion truly holds is that this Court, and not the Legislature, is overruling *Jones v. Rinehart & Dennis.* The Court's reasoning in *Jones* in 1933 matches perfectly with the reasoning adopted by other courts in America; hence, the case had to be disposed of in some fashion to make way for the majority opinion's new rule of law. Rather than being forthright, the majority opinion pinned the blame for the demise of *Jones* on the Legislature.

I was troubled to also find in the majority's opinion a rewriting of science and rewriting of history. The majority opinion suggests that the mental injury incurred by the plaintiff, Berchie Eugene Bias, was a mere trifle because it "occurr[ed] within a period of 90 minutes or so . . . when plaintiff was trapped in a smoky environment within a mine." The majority opinion then distinguishes Mr. Bias's injury from that of the plaintiff in *Jones v. Rinehart & Dennis,* because Mr. Bias's injury "was not at all similar to the slowly developing disease at issue in *Jones.*"

First, modern medical science shows that traumatic stress disorders are, in fact, a physical injury. The shock of a terrifying event—like a rape, a robbery at gunpoint, or fearing death by suffocation when lost in the smoky darkness of a mine for ninety minutes—triggers chemical reactions in the brain that measurably scar and injure nerve tissue. The brain is actually, physically "rewired" and injured. To somehow suggest that the injury to the plaintiff's brain is different from the lung injury that suffocated the decedent in *Jones* reflects a primitive, out-dated view of science.

The majority opinion reflects a disdain for the extreme fear of death that coal miners like Mr. Bias face on a daily basis—a fear that has become all-too-real this year—and the disabling effect that fear can have on a miner's psyche. So far, in 2006, at least thirty-three miners have died in America on the job, nineteen of them in West Virginia. In January, twelve miners died at the Sago mine after an explosion, eleven of them by suffocation waiting for rescue. Less than three weeks later, two miners suffocated after a fire at the Aracoma Alma No. 1 Mine, when the miners became lost in the smoke. In May, three miners survived an explosion at the Darby Mine No. 1 in eastern Ken-

remedy so as to bar an action at common law, or under a statute, to recover for an injury or disease which was not compensable under the act.").

5. *See 1935 Acts of the Legislature,* Chapter 79 ("providing for compensation for disability, disablement or death resulting from silicosis, and defining silicosis"). As I discuss later, this 1935 enactment was a direct response to the industrial disaster that was the basis for *Jones v. Rinehart & Dennis:* the Hawk's Nest tunnel incident.

The Legislature further amended the workers' compensation act to cover occupational diseases in 1949, but continued to exclude from coverage gradually-contracted lung diseases such as coal worker's pneumoconiosis ("black lung") until after the November 1968 mine disaster in Farmington, West Virginia, a disaster which finally brought the plight of injured miners to the public eye. *See 1949 Acts of the Legislature,* Chapter 136 (adding coverage for "occupational diseases"); and *1969 Acts of the Legislature,* Chapter 152 (expanding the definition of "occupational disease" to include "occupational pneumoconiosis").

tucky, only to die of carbon monoxide poisoning waiting in the smoke for rescue. It pains me to hear of these deaths, and then read the majority opinion's callous treatment of Mr. Bias's claims.[6]

Second, the majority opinion rewrites history because it *presumes* that the decedent in *Jones* suffered from a "slowly developing disease." The *Jones* opinion tells us only that the decedent died of silicosis caused by breathing dust that was "more than ninety-nine per centum silica" while digging an underground tunnel "near the village of Hawks Nest." 113 W.Va. at 415–16, 168 S.E. at 482–83. History, however, reveals that hundreds, perhaps over a thousand, immigrant and African American workers died digging the Hawks Nest Tunnel; no one knows the true figure because the tunnel contractor didn't bother to count, the bodies were often placed in mass graves, and records of the construction project were quickly destroyed. Workers left the tunnel covered head-to-toe in dust, and were so dust-covered they left dusty footprints as they walked. Workers could only work for a few days, a few weeks, maybe a few months, in the tunnel before they succumbed to the suffocating effects of the silica dust. Few workers were capable of staying on the job more than a year. History tells us, therefore, that the decedent in *Jones* very likely died from an injury that developed almost immediately from massive exposure to pure silica dust—and was not, as the majority opinion wishes, a "slowly developing disease." *See* Martin Cherniack, *The Hawk's Nest Incident: America's Worst Industrial Disaster* (1986).

What I find even more troubling is that the majority opinion construes our common law and statutes in a way to reach a wholly, completely unconstitutional result. The framers of the *West Virginia Constitution* provided citizens who have been wronged with rights to pursue a remedy for that

wrong in the court system. Those rights can only be abrogated if something is given to the citizen in its place. *See W.Va. Constitution*, Art. III, § 17 ("The courts of this state shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law[.]")

The result in this case turns statutory construction on its head. Statutes are to be construed to reach a constitutional result, not the other way around. Syllabus Point 1, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965) ("Every reasonable construction must be resorted to by the courts in order to sustain constitutionality[.]"). As this Court sagely stated in *Jones v. Rinehart & Dennis Co.*, 113 W.Va. at 426, 168 S.E. at 487.

> [T]he courts must administer the law as it is written, and must not undertake to make law. But where a court is confronted with two constructions—the first destructive of personal rights in that it takes away the means of effectuating such rights and of obtaining redress for their breach, and the other not destructive of either rights or remedies but harmonizing with basic conceptions of personal justice—the latter is preferred. This is interpreting law, not making it. The courts will not recognize that there is an open gap in the law where by reasonable interpretation such undesired condition can be avoided.

The interpretation given to our workers' compensation statutes by the majority opinion goes the opposite direction, and ends up abrogating a common law remedy and replacing it with nothing. The majority opinion does not harmonize the workers' compensation laws with basic conceptions of personal justice, but instead chooses to construe the laws to both eliminate personal, common law rights and eliminate any redress for their

---

**6.** I am reminded of the story of a man I knew who was the brother of a miner killed in the 1968 explosion of the mine in Farmington. This man was also a miner, a hard worker who rarely missed a day of work, and a solid member of the community. The day of the explosion he was scheduled to work, but did not work because he had to take his wife to a doctor. When he heard about the explosion, he ran to the mine, hoping to rescue his brother. After learning of his brother's death, the man became an emotional wreck and never worked another day in the mines. His marriage dissolved, his house fell into disrepair, and he ended up in bankruptcy. His emotional collapse could only be attributed to the mine explosion, even though he never suffered a single scratch.

breach. In sum, the majority opinion construes the workers' compensation statutes in an unreasonable way so as to reach an unconstitutional result.

The majority opinion doesn't mention that its holding violates the constitutional rights of every West Virginia citizen. The majority, however, has a remarkable reason for avoiding the constitutional question: the lawyers representing the plaintiffs below never raised the constitution as a bar to the arguments made by the defendant below.

Let me make my statement clear. I am not saying the plaintiffs' lawyers were negligent; frankly, they probably thought, just like I did, that the law was clearly on their side and that no constitutional argument needed to be made.

What I am saying is that the majority of the members of this Court know the constitutional rights of West Virginia's citizens are being eviscerated—but they are willing to abdicate their role as defenders of the *Constitution* so long as nobody makes a public fuss. Each member of this Court was required, by law and by the *Constitution*, to take an oath to support and defend the *Constitution*—yet the members of the majority now find themselves undermining the *Constitution* simply because no one pointed out that, perhaps, they shouldn't do that. Constitutional rights are being trampled because of a technicality.

This is not the first time this Court has ignored its duty to support and defend the *Constitution*. The United States Supreme Court recently vacated a criminal conviction that had been affirmed by three members of this Court because the Court had ignored a blatant violation of the *Constitution*. The U.S. Supreme Court remanded the case to this Court for reconsideration, and Justice Scalia candidly said it was a "tutelary remand, as a schoolboy made to do his homework again." *Youngblood v. West Virginia*, 547 U.S. ——, ——, 126 S.Ct. 2188, 165 L.Ed.2d 269 (Dissenting Slip Op. at 4) (No. 05–6997, June 19, 2006) (Scalia, J. dissenting). Justice Scalia said that the U.S. Supreme Court's suggestion that it would be "better" for this Court to reconsider its decision to ignore the constitutional violation was

"much as a mob enforcer might suggest that it would be 'better' to make protection payments." *Id.*

In conclusion, I am dismayed by the majority decision in this case. This Court is on a path to abdicate its role as the third branch in our constitutional government, and this case is another step on that path. For generations, courts have fostered and developed the common law, tempering the common law to meet modern day needs, and zealously protected the common law from legislative intrusion. As this case demonstrates, today, this Court is too often perfectly willing to cede control of the common law to the Legislature. I decline to join in the disintegration of the constitutional role of the courts as caretakers of the common law.

The Legislature has made it clear that employees who suffer purely emotional injuries at the hands of their employers on the job have no right to workers' compensation benefits. Now, the Court has chosen to dump those very same employees into a judicial purgatory with no remedy in the common law—when right, reasoning and the *Constitution* demand that those employees have a right to pursue an action in the courts.

I dissent.

DAVIS, C.J., concurring.

(Filed July 18, 2006)

In this proceeding, the majority opinion has held that the immunity afforded employers under W. Va.Code § 23–2–6 (2003), precludes an employee from bringing a so-called mental-mental cause of action against an employer. I concur fully in the decision of the majority opinion. I have chosen to write separately to underscore the limitations of the Certain Remedy Clause of our State Constitution. I want to be clear. The decision reached in this case is supported by precedents in other jurisdictions. Moreover, this Court can no longer apply the rule of liberality to workers' compensation statutes.

*A. The Rights Conveyed by the Certain Remedy Clause of Our State Constitution Are Not Absolute*

Prior to 1981, a mental-mental injury claim was not recognized in workers' compensation.

As the majority opinion points out, this Court created a mental-mental claim against employers in *Breeden v. Workmen's Compensation Comm'r*, 168 W.Va. 573, 285 S.E.2d 398 (1981). The decision in *Breeden* allowed such a claim only in the context of workers' compensation litigation. Over a decade after the *Breeden* opinion, our legislature overruled that decision through enactment of W. Va.Code § 23–4–1f (1993). The statute provides, in part, that "no alleged injury or disease shall be recognized as a compensable injury or disease which was solely caused by nonphysical means and which did not result in any physical injury or disease to the person claiming benefits."

In this proceeding, the plaintiff contends that the effect of this statute leaves him and "others similarly situated, without any remedy whatsoever to redress his damages." Although this argument was not sufficiently briefed, it implicated the Certain Remedy Clause of Art. III, § 17 of our State Constitution.[1]

Our Court has recognized that "[a] severe limitation on a procedural remedy permitting court adjudication of cases implicates the certain remedy provision of Article III, Section 17 of the West Virginia Constitution." *State ex rel. West Virginia State Police v. Taylor*, 201 W.Va. 554, 565, 499 S.E.2d 283, 294 (1997). Article III, § 17 states "[t]he courts of this State shall be open, and every person for an injury done to him ... shall have remedy by due course of law[.]" In the a recent decision of this Court, Justice Starcher pointed out that "[w]hile access to courts is a recognized fundamental right, it is also a commonly recognized principle that such right of access is not without limitations." *Mathena v. Haines*, 219 W.Va. 417, 421, 633 S.E.2d 771, 775 (2006). That is, our prior decisions interpreting the Certain Remedy Clause make clear that the Clause does not provide an absolute right to a remedy for an injury. *See Marcus v. Holley*, 217 W.Va. 508, 618 S.E.2d 517 (2005) (upholding statute

giving part-time employees lower temporary total disability benefits, or permanent partial disability benefits or permanent total disability benefits); *O'Dell v. Town of Gauley Bridge*, 188 W.Va. 596, 425 S.E.2d 551 (1992) (upholding statute immunizing political subdivision from liability if claim is covered by workers' compensation); *Robinson v. Charleston Area Medical Center, Inc.*, 186 W.Va. 720, 414 S.E.2d 877 (1991) (upholding statute that limited damages in medical malpractice actions); *Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 408 S.E.2d 634 (1991) (upholding statute barring action against ski resort operators); *Randall v. Fairmont City Police Dept.*, 186 W.Va. 336, 412 S.E.2d 737 (1991) (upholding statute granting qualified tort immunity to political subdivisions).

"The legislature has the power to alter, amend, change, repudiate, or abrogate the common law." *Verba v. Ghaphery*, 210 W.Va. 30, 35, 552 S.E.2d 406, 411 (2001).[2] This Court has developed a two-part test for determining whether the Certain Remedy Clause is violated:

> When legislation either substantially impairs vested rights or severely limits existing procedural remedies permitting court adjudication, thereby implicating the certain remedy provision of article III, section 17 of the Constitution of West Virginia, the legislation will be upheld under that provision if, first, a reasonably effective alternative remedy is provided by the legislation or, second, if no such alternative remedy is provided, the purpose of the alteration or repeal of the existing cause of action or remedy is to eliminate or curtail a clear social or economic problem, and the alteration or repeal of the existing cause of action or remedy is a reasonable method of achieving such purpose.

Syl. pt. 5, *Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 408 S.E.2d 634 (1991).

---

**1.** "This state constitutional provision has sometimes been called the 'open courts' or 'access-to-courts' provision." *Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 694 n. 13, 408 S.E.2d 634, 644 n. 13 (1991).

**2.** "[T]he general authority of the legislature to alter or repeal the common law is expressly conferred by article VIII, section 13 of the Constitution of West Virginia." *Robinson v. Charleston Area Medical Center, Inc.*, 186 W.Va. 720, 727, 414 S.E.2d 877, 884 (1991).

Under the *Lewis* test, a statute which deprives a person of a previously recognized remedy for an injury will be sustained if the intent of the statute is to eliminate an economic problem, and repeal of the existing remedy is a reasonable method of achieving that purpose. Our prior decisions support finding that W. Va.Code § 23–4–1f was enacted to address an economic problem facing the workers' compensation system and that its enactment was a reasonable method for obtaining that purpose.[3] *See, e.g., State ex rel. Beirne v. Smith,* 214 W.Va. 771, 591 S.E.2d 329 (2003) (addressing permanent total disability changes); *State ex rel. ACF Industries, Inc. v. Vieweg,* 204 W.Va. 525, 514 S.E.2d 176 (1999) (addressing permanent total disability changes); *Bush v. Richardson,* 199 W.Va. 374, 484 S.E.2d 490 (1997) (addressing subrogation statute); *Hardy v. Richardson,* 198 W.Va. 11, 479 S.E.2d 310 (1996) (addressing changes for reopening a claim); *State ex rel. Blankenship v. Richardson,* 196 W.Va. 726, 474 S.E.2d 906 (1996) (addressing permanent total disability changes). In fact, this Court has previously upheld W. Va.Code § 23–4–1f on nonconstitutional grounds. *See Conley v. Workers' Compensation Division,* 199 W.Va. 196, 483 S.E.2d 542 (1997) (requiring statute to be applied prospectively).

Obviously, this Court is deeply concerned with the fact that the legislature took away the mental-mental claim from the workers' compensation system and failed to provide an alternative remedy against employers in the courts of this state. "However, the ... legislature has granted employers broad immunity from common law liability in favor of defined statutory liability under the ...

Work[ers'] Compensation Act. What remedies are available under the Act in lieu of common law remedies is up to the ... legislature." *Building & Constr. Dep't v. Rockwell Int'l Corp.,* 7 F.3d 1487, 1494 (10th Cir.1993). This Court has long held that "[i]t is not the province of the courts to make or supervise legislation[.]" *State v. General Daniel Morgan Post No. 548,* 144 W.Va. 137, 145, 107 S.E.2d 353, 358 (1959) (citation omitted). We "may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations[.]" *Lewis,* 185 W.Va. at 692, 408 S.E.2d at 642.

B. *Other Jurisdictions Do Not Permit a Common Law Action Against Employers for Claims Not Covered under Workers' Compensation*

In the instant case, the plaintiffs sought to have this Court recognize a common law mental-mental claim against an employer. This claim is essentially a negligent tort cause of action against an employer. We have has previously pointed out that the exclusivity provision of W. Va.Code § 23–2–6 "only contemplates an exemption of contributing employers from liability for 'damages at common law or by statute for the injury or death of any employee' arising out of a *negligently-inflicted injury* of an employee." *Persinger v. Peabody Coal Co.,* 196 W.Va. 707, 717, 474 S.E.2d 887, 897 (1996) (emphasis added).[4] Insofar as the plaintiffs sought to bring a negligent tort action against the employer, sound legal and policy reasons supported the majority decision in refusing "to open a Pandora's box of litigation[.]" *Persinger,* 196 W.Va. at 717, 474 S.E.2d at 897.[5] *See also* Joseph H. King, Jr., "The

---

**3.** The legislature enacted a number of statutes during the 1990's designed to address the financial crisis facing the workers' compensation system. *See generally,* Robin Jean Davis & Louis J. Palmer, Jr., "Worker's Compensation Litigation in West Virginia: Assessing the Impact of the Rule of Liberality and the Need for Fiscal Reform," 107 W. Va. L.Rev. 43 (2004).

**4.** The decision in *Persinger* recognized that, initially by case law and subsequently by statute, an employer is not immune from action by an employee for an intentional tort. *See Mandolidis v. Elkins Indus. Inc.,* 161 W.Va. 695, 246 S.E.2d 907 (1978), superseded by statute, W. Va.Code § 23–4–2(d) (2005). In *Persinger* we recognized

a common law cause of action against "an employer for damages as a result of the employer *knowingly and intentionally* fraudulently misrepresenting facts to the Workers Compensation Fund that are not only in opposition to the employee claim, but are made with the intention of depriving the employee of benefits rightfully due him." Syl. pt. 1, in part, *Persinger* (emphasis added).

**5.** It should be noted that the plaintiffs may not be without a remedy to the extent they are able to satisfy the requirements of their alternative deliberate intent cause of action.

Exclusiveness of an Employee's Workers' Compensation Remedy Against His Employer," 55 Tenn. L.Rev. 405, 408 (1988) (pointing out that the exclusivity "rule should not be subverted with so many exceptions that the protection it offers becomes illusory.").

Although there is persuasive authority by a majority of courts holding that if an injury is not covered by workers'·compensation, a common law action may be maintained against an employer,[6] there is equally persuasive authority from a minority of courts holding "that the workers' compensation [exclusivity] bar applies even if an employee suffers losses which are not compensable under the Workers' Compensation Law." *Maas v. Cornell University*, 253 A.D.2d 1, 683 N.Y.S.2d 634, 636 (1999) (citations omitted). *See also Clarke v. Kentucky Fried Chicken of California, Inc.*, 57 F.3d 21, 28–29 (1st Cir. 1995) (holding that under Massachusetts law an employee cannot bring an action for negligent infliction of emotional distress arising out of bona fide personnel actions even though no coverage provided by workers' compensation); *Building & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1494 (holding that under Colorado law an employee cannot bring an action for medical monitoring against an employer even though no coverage provided by workers' compensation); *Ogden v. Keystone Residence*, 226 F.Supp.2d 588, 604 (M.D.Pa.2002) (holding that under Pennsylvania law an employee cannot bring an action for negligent or intentional infliction of emotional distress against an employer); *Gilbert v. Essex Group, Inc.*, 930 F.Supp. 683, 688–689 (D.N.H.1993) (observing that New Hampshire's "workers' compensation law … bars an employee's common law action for personal injuries including emotional distress arising out of an employment relationship."); *Zaytzeff v. Safety-Kleen Corp.*, 222 Ga.App. 48, 473 S.E.2d 565, 568 (1996) (even though claim not covered by workers' compensation, the exclusivity provision still bars cause of action); *Cole v. Chandler*, 752 A.2d 1189, 1196 (Me.2000) (holding that no common law cause action allowed against employer for mental injuries). The justification for not permitting a negligent

common law cause of action against an employer by an employee was succinctly stated in *Doss v. Food Lion, Inc.*

> The exclusivity provision is the bedrock of the workers' compensation system. The legislature has determined that it is the quid pro quo for workers receiving a guarantee of prompt benefits for work-related injuries without regard to fault or common-law defenses and without the delay inherent in tort litigation. Workers' compensation has never been intended to make the employee whole—it excludes benefits for pain and suffering, for loss of consortium, and it provides a cap on wage benefits.
>
> Thus, the exclusion of an independent tort action … is not contrary to public policy or the statutory scheme. Any enlargement of benefits and remedies must originate with the legislature.

267 Ga. 312, 477 S.E.2d 577, 578 (1996). *See also Ex parte Shelby County Health Care Auth.*, 850 So.2d 332, 338 (Ala.2002) (" '[T]his Court does not have the authority to judicially engraft exceptions into the immunity provisions applicable to the employer[.]' (internal quotations and citation omitted)); *Building & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1494 ('We reject plaintiffs' further argument that due process concerns prohibit applying the Acts exclusivity provisions where the Act would not provide a remedy. It has long been recognized that legislatures have broad power to adjust relations between employers and employees under workers' compensation principles.' ").

The issue of a common law negligent action against an employer was presented squarely to this Court in the recent decision of *State ex rel. City of Martinsburg v. Sanders*, 219 W. Va. 228, 632 S.E.2d 914 (2006). In *Sanders* we were called upon to decide whether municipal employees could maintain common law theories of liability for medical monitoring against their municipal employer. Justice Albright, writing for the majority of the Court, rejected such claims. In clear language Justice Albright stated in *Sanders* that "[t]he immunity from liability afforded all employers participating in the Workers'

**6.** *See* Arthur Larson, *Larson's Workers' Compen-*      *sation Law,* § 100.04 (2005) (citing cases).

Compensation system through West Virginia Code § 23–2–6 (2003) protects a political subdivision against awards of medical monitoring damages based on common law tort theories." Syl. pt. 4, *Sanders.*

The decision in *Sanders,* as articulated by Justice Albright, illustrates this Court's commitment to refrain from judicial activism, by encroaching upon the authority of the legislature to bar negligent claims by employees against their employers. *See Boyd v. Merritt,* 177 W.Va. 472, 474, 354 S.E.2d 106, 108 (1986) ("This Court does not sit as a super-legislature. . . . It is the duty of the legislature to consider facts, establish policy, and embody that policy in legislation.").

### C. The Rule of Liberality Cannot Be Applied to Workers' Compensation Statutes

When this Court decided the cases of *Jones v. Rinehart & Dennis Co., Inc.,* 113 W.Va. 414, 168 S.E. 482 (1933) (making the disease of silicosis compensable) and *Breeden v. Workmen's Compensation Commissioner,* 168 W.Va. 573, 285 S.E.2d 398 (1981) (making mental-mental claims compensable), the rule of liberality was fully applicable to the interpretation of workers' compensation statutes. The rule of liberality mandates that workers' compensation statutes be construed in favor of employees. *See* Davis & Palmer, "Worker's Compensation Litigation in West Virginia," 107 W. Va. L.Rev. at 90 ("Under the rule of liberality whenever there is any ambiguity in a workers' compensation statute or evidentiary uncertainty, doubt is resolved in favor of the employee."). As a result of the presence of the rule of liberality, the decisions in *Jones* and *Breeden* were able to construe the workers' compensation statutes in favor of employees and provide the relief requested. However, in 2003 the legislature abolished the rule of liberality. W. Va.Code § 23–1–1(b) (2005) provides that "the Legislature hereby declares that any remedial component of the workers' compensation laws is not to cause the workers' compensation laws to receive liberal construction[.]" *See also,* W. Va.Code § 23–4–1g(b) (2003).

In the instant case, the rule of liberality could not be applied by this Court to grant the relief sought by the plaintiffs. Conse-quently, the exclusivity provision had to be examined strictly according to the rules of statutory construction. Under the rules of statutory construction "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951). *Accord DeVane v. Kennedy,* 205 W.Va. 519, 529, 519 S.E.2d 622, 632 (1999) ("Where the language of a statutory provision is plain, its terms should be applied as written and not construed.").

The exclusivity provision contained in W. Va.Code § 23–2–6 states, in part, that "[a]ny employer subject to this chapter who subscribes and pays into the workers' compensation fund ... is not liable to respond in damages at common law or by statute for the injury or death of any employee[.]" There is nothing ambiguous in this provision. Under the statute a common law mental-mental claim simply cannot be brought against an employer. *See* Syl. pt. 2, *Crockett v. Andrews,* 153 W.Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation.").

In the final analysis, I believe a remedy should be provided for *legitimate* mental-mental claims. However, this Court is not the branch of government empowered to create a common law negligence claim against employers. This type of remedy can come only from the legislative branch of government.

In view of the foregoing, I respectfully concur. I am authorized to state that Justice Maynard joins me in this concurring opinion.